JUDGE PAULEY

10 CV 4622

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAREN SCOTT,<br><br>      Plaintiff,<br><br>  -against-<br><br>WPIX, INC.,<br><br>      Defendant. | 10 CV _____<br><br>**COMPLAINT and<br>JURY DEMAND**<br><br>ECF Case |



U.S.D.C. S.D.N.Y.
CASHIERS

    Karen Scott, by her attorneys, Haynes and Boone, LLP, for her Complaint against defendant WPIX, Inc. ("WPIX" or the "Company"), alleges as follows:

### Nature of Action

    1. This action arises out of the unlawful discrimination on the basis of age by WPIX. Karen Scott, one of the most decorated women in television news, was wrongfully terminated as the News Director of WPIX (Channel 11 in the New York Metropolitan area) due to her age. After 13 noteworthy years as News Director, Ms. Scott was terminated in late August 2009. At that time, the purported reason provided for Ms. Scott's termination was "ratings" (a position WPIX has since modified). As described below, however, age was the true motivating factor for terminating Ms. Scott. As a result of its actions, WPIX is liable for age discrimination in employment against Ms. Scott in violation of (a) the Age Discrimination in Employment Act ("ADEA"); (b) the New York City Human Rights Law; and (c) the New York State Human Rights Law, and for damages which have resulted from the Company's unlawful discriminatory practices.

### The Parties

    2. Karen Scott is an individual who resides in New York, New York. She is currently 60 years old.

3. Upon information and belief, WPIX, Inc., is a corporation organized under the laws of the State of Delaware with a principal place of business located at 220 East 42nd Street, New York, New York 10017. WPIX is owned by Tribune Broadcasting, a division of the Tribune Company. Upon information and belief, as of September 2009, WPIX had over 400 employees. On or about December 8, 2008, the Tribune Company and each of its affiliated entities, including WPIX, filed a petition for bankruptcy relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court, District of Delaware. The bankruptcy proceeding remains pending.

### Jurisdiction and Venue

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367.

5. Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to Ms. Scott's claims occurred within this District.

6. Ms. Scott filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 14, 2010. Ninety days have elapsed since Ms. Scott's EEOC filing. Copies of this Complaint are being served upon the EEOC, the New York City Commission on Human Rights, and the Corporation Counsel.

### Factual Allegations Relevant to Claims for Relief

7. Ms. Scott was employed by WPIX from May 1993 until her employment was terminated on August 26, 2009. In terminating Ms. Scott's employment, WPIX discriminated against Ms. Scott based on her age.

8. Throughout the course of her employment with WPIX, Ms. Scott was qualified for her position and performed her duties in a professional and competent manner.

Employment History and Achievements

9. Ms. Scott is one of the most respected and decorated newspersons in the United States. For over 35 years, Ms. Scott worked in television news and, as more fully described below, personally received numerous national and local awards, and was largely responsible for the receipt of numerous awards by her employers.

10. Ms. Scott received a Bachelor of Arts degree in journalism from Ohio State University in 1971. Following graduation, Ms. Scott began her career in broadcast journalism for television stations in Detroit where she worked for approximately six years.

11. Following a four year stint as producer for the 6:00 p.m. and 11:00 p.m. news at the CBS affiliate in Hartford, Connecticut, Ms. Scott was hired by WNBC-TV in New York in 1983. After beginning as a freelance writer, Ms. Scott was promoted to weekend news producer for the 6:00 p.m. and 11:00 p.m. news broadcasts. Shortly thereafter, Ms. Scott was again promoted to producer for the 6:00 p.m. news and executive producer for special projects.

12. During Ms. Scott's 10-year career at WNBC, the station received the Emmy Award for "Best Newscast" a record-setting five straight years.

13. After WNBC received an Emmy Award for best newscast in 1993, Michael Eigner, General Manager of WPIX, and John Corporon, the News Director for WPIX, offered Ms. Scott a position as the Executive Producer for WPIX news.

14. In May 1993, Ms. Scott accepted WPIX's offer and within a year, she was promoted to Assistant News Director. During her first year of employment with WPIX, Ms. Scott produced various specials such as the St. Patrick's Day Parade and the Macy's July Fourth Fireworks Show as well as "Schindler: The Real Story," which received the Gabriel Award (the highest broadcast award given by the Catholic Broadcasters Association) for broadcast excellence.

15. Between 1994 and 1996, WPIX received two New York Emmy Awards and two Edward R. Murrow Awards (one of the most prestigious national broadcast journalism awards), from the Radio-Television News Directors Association for "Best Newscast" and "Best Spot News."

16. In 1996, Ms. Scott was promoted to News Director. As News Director, Ms. Scott was responsible for overseeing the entire news organization, including all news coverage, with general supervision and oversight for over 200 employees.

17. In addition, Ms. Scott was responsible for recruiting news related personnel, including writers, associate producers, producers, executive producers, managing editors, assistant news directors, anchors, reporters, and freelance staff. The majority of current WPIX news on-air personnel, reporters, writers, and producers were hired by Ms. Scott during her tenure, many of whom were lured from other prominent stations by Ms. Scott, which helped to elevate WPIX's news profile.

18. Ms. Scott changed the face of the news division at WPIX. At the time she began as News Director, WPIX only had a one hour 10:00 p.m. news program. At the time of Ms. Scott's termination, WPIX was producing approximately 30 hours of news coverage each week.

19. Ms. Scott was instrumental in creating a morning news show (the "Morning Show"), which airs five days a week for four and a half hours per day, and covers news, entertainment, weather, traffic, sports, and includes live guests,[1] and was a driving force behind the formation of WPIX news bureaus in Washington, D.C., New Jersey, and Long Island, New York.

20. During her tenure as News Director, WPIX received over 100 local and national awards for excellence in reporting, news coverage, public affairs, news specials, and features,

---

[1] The Morning Show format developed by Ms. Scott was used as the template for the creation of morning shows for other nationwide stations owned by Tribune.

4

including numerous New York Emmy Awards and Edward R. Murrow Awards. The following is a partial list of awards and recognition received by WPIX during the last five years under Ms. Scott's stewardship:

- 2009: New York State Associated Press Broadcasters Association: "Best Regularly Scheduled Local News Program," "Best Spot News," and "Best Continuing News Coverage"

    New York Press Club: "Best Regularly Scheduled Local Newscast"

- 2008: Edward R. Murrow Award: "Best Newscast"

    New York Press Club: "Best Regularly Scheduled Local Newscast"

    Congressional Record for Leadership as News Director

- 2007: New York Emmy Awards: "Outstanding Single Newscast," "Best Spot News," and "Best Breaking News Story"

    Associated Press New York State Broadcaster Association Grand Prize Television Award

- 2005: New York Emmy Awards: "Best Newscast" for the morning *and* evening news, "Outstanding Single Newscast," and "Outstanding Single News Program"

21. In 2009, the New York Chapter of the National Academy of Television Arts and Sciences nominated WPIX for 32 Emmy Awards, more nominations than WCBS, WNBC, WABC, WNYW, and WWOR. The nominations included, Best Morning Newscast, Best Evening Newscast, Best Breaking News, Best Hard News Series, Best Investigative Series, Best Sports Coverage, and Best On Camera Talent.

22. The recognition WPIX news received during Ms. Scott's tenure was a quantum leap for its reputation and industry-wide standing in broadcast news.

N-80517_1.DOC

23. Ms. Scott's achievements were also recognized in various other ways. For example, following WPIX's coverage of September 11, 2001, the Television Quarterly (Journal of the National Academy of Television Arts and Sciences) requested that Ms. Scott write about her experience, which became the cover story for that national publication. In addition, Ms. Scott was the only news director who was asked to testify before the Federal Communications Commission concerning the media's coverage of September 11.

24. Ms. Scott was able to bring the WPIX news division to new heights despite facing significantly greater hurdles than competing local news stations. As compared to its peers, WPIX had far less resources and staff at its disposal. WPIX news had fewer reporters, fewer trucks for live shots, less camera equipment, and fewer camera operators. Furthermore, despite the numerous awards and recognition the news division received, WPIX's promotional efforts for the news was minimal and, at times, non-existent.

25. Of great significance, and the subject of ongoing discussions, the lead-in programming for WPIX news was substantially inferior to other local stations. By way of example, while WPIX news at 10:00 received numerous awards, the lead-in programming was rarely, if ever, mentioned or recognized in a positive light.

26. In addition, the Tribune's financial condition, which resulted in a bankruptcy filing in December 2008 (which included WPIX), adversely impacted WPIX's ability to operate competitively.

27. In the face of the aforementioned obstacles, Ms. Scott continued to excel in her job and WPIX news continued to receive acclaim for its coverage.

28. During her tenure, Ms. Scott's annual performance reviews and evaluations consistently reflected her stellar performance, significant contributions, and value-added to

6

WPIX. Indeed, Ms. Scott was never issued a single "corrective notice" with regard to her performance.

The Termination of Ms. Scott's Employment

29. On August 26, 2009, Betty Ellen Berlamino, then General Manager of WPIX[2], advised Ms. Scott that her employment was being terminated due to "ratings." No additional explanation or information was provided by Ms. Berlamino, or by anyone else at WPIX.

30. As General Manager of WPIX, Ms. Berlamino was responsible for programming decisions, promotional efforts, and the station's budget, and was directly responsible for the ratings. In connection therewith, Ms. Berlamino was charged with providing her staff, including Ms. Scott, with the necessary resources to ensure that programming could be competitively managed. Ms. Scott's job was to produce the news programming for WPIX, a job she excelled at until the date she was terminated.

31. After being informed of her termination, Ms. Scott reiterated to Ms. Berlamino that, even with significantly less resources at her disposal and markedly inferior lead-in programming and promotional efforts than competitor stations, she was able to keep WPIX's news ratings at a more than respectable level. Of greater import, when taking into account the dismal lead-in programming (especially as compared to its competitors), the ratings for WPIX news was worthy of praise.[3] Ms. Berlamino offered no response and simply left the room.

32. As Ms. Berlamino was keenly aware, flaws within the "ratings" system, as reflected in complaints lodged against Nielsen Media Research ("Nielsen"), contributed to any purported ratings decline. Since the implementation of a "People Meter" several years ago, Nielsen itself conceded that its ratings have limited accuracy. This change resulted in declining

---

[2] Upon information and belief, on or about June 8, 2010, Ms. Berlamino was terminated by WPIX.

[3] Indeed, during a WPIX staff meeting, Tribune's Chief Operating Officer remarked on the significance of lead-in programming.

N-80517_1.DOC

ratings industry-wide and complaints were rampant as declining ratings translated to declining revenues for many stations. WPIX even designated personnel to study this issue and leadership from the major television networks (including Ms. Berlamino) discussed their dissatisfaction with Nielsen and the intent to take action. In its submission to the EEOC, WPIX conceded concerns related to the Nielsen ratings.

33. In an effort to save face for what was sure to be a wildly unpopular decision, Ms. Berlamino asked Ms. Scott to voluntarily resign. Without Ms. Scott's consent, WPIX issued a statement falsely announcing that Ms. Scott had resigned from her position as News Director, although Ms. Scott clearly did not.

34. WPIX personnel were reportedly "stunned" by the decision to terminate Ms. Scott. One employee reportedly commented that: "Everyone who knows [Scott], knows she never would have resigned." Numerous employees actually cried after being informed of Ms. Scott's termination.[4]

35. Ms. Scott's last day of work at WPIX was September 4, 2009. At the time she was terminated, Ms. Scott was the longest running news director at any station in New York City.

36. On Ms. Scott's last day in the office, her colleagues presented her with a video tribute and an on-air tribute was aired. In the videos, WPIX staff praised Ms. Scott's leadership, people skills, and overall expertise as a news director. In a most telling reflection of her time as News Director, on her last day at WPIX, Ms. Scott received an award from the New York Press Club for the 2009 "Best Regularly Scheduled Local Program."

37. WPIX provided Ms. Scott with a separation agreement that Ms. Scott refused to execute.

---

[4] These reported reactions, as well as on-air and off-air video tributes to Ms. Scott, directly contradict WPIX's claim that a reason underlying the decision to terminate Ms. Scott was her inability to "demonstrate leadership."

38. After her termination, Ms. Scott timely filed a Charge of Discrimination with the EEOC alleging age discrimination. WPIX apparently realized the weakness of its stated "ratings" motivated termination, as in its submission to the EEOC -- and in direct contradiction of its public statements regarding Ms. Scott's termination -- WPIX shifted course and alleged "performance" was the basis for Ms. Scott's termination.[5]

39. As purported support for its new contention, WPIX mainly relies on select e-mails from 2004 and 2005, although it failed to offer any explanation as to why Ms. Scott was neither terminated nor ever issued any corrective action notice as a result of the purported performance issues in 2004-2005.[6]

40. WPIX's actions in terminating Ms. Scott was consistent with its actions in terminating or significantly modifying the roles of other older employees as well as with Ms. Berlamino's age-based commentary. By way of more recent examples: (i) in 2009, WPIX demoted Marvin Scott (no relation), 72, a well-known and respected reporter, from weekday to weekend reporting duties, about whom Ms. Berlamino had frequently made age-related remarks including "why doesn't he just retire already?" (Ms. Scott struggled with Ms. Berlamino over several years in an effort to retain Mr. Scott in his customary position); (ii) in 2009, WPIX directed Kaity Tong, 59, and an anchor of WPIX news since 1991, to undertake certain additional tasks and responsibilities, which differed from other anchors and reporters, as part of a

---

[5] Interestingly, WPIX appears to concede the unreliability of its manufactured "performance" motivated reasoning for the termination as it included a footnote disclaimer within its EEOC submission, that its submission does "not constitute an affidavit and is not intended for use as evidence in any court proceeding."

[6] As evidence of the alleged "performance" issues, WPIX claims that Ms. Scott failed "to manage and evaluate her staff" and "discipline her direct reports." Ironically, as purported support, WPIX relies on e-mails from Ms. Berlamino which specifically advised Ms. Scott to "issue corrective action to her subordinates" and address issues in performance reviews. Although Ms. Berlamino clearly understood the importance of performance reviews and corrective actions, she apparently never felt that Ms. Scott's performance warranted any corrective action. Around the same dates as the e-mails WPIX included in its EEOC submission as purported support for Ms. Scott's "performance" issues, is an e-mail from Ms. Berlamino to "WPIX *everyone*" in which she gave a "special thanks" to Ms. Scott for her "leadership" and "commitment to excellence."

9

N-80517_1.DOC

concerted effort aimed at forcing her departure from WPIX; (iii) in December 2008, WPIX decided not to retain Sal Marchiano, 68, a beloved sports anchor in New York, after Ms. Berlamino remarked to Ms. Scott that he "doesn't look good on the air" due to his advanced age[7]; and (iv) in 2009, WPIX decided not to retain Larry Hoff, 58, a feature reporter, about whom Ms. Berlmaino made age-related comments, despite positive feedback received about Mr. Hoff through a consultant retained by the Company.

Ms. Scott's Replacement

41.   In November, 2009, William Carey (approximately 10 years Ms. Scott's junior), was hired by WPIX to replace Ms. Scott as News Director. Immediately prior to joining WPIX, Mr. Carey was employed with a station in Moline, Illinois, and prior to that, he worked at local stations in Tampa and Detroit.[8] Under any objective analysis, Mr. Carey's work experience and background paled in comparison to Ms. Scott.[9]

Damages

42.   At the time she was terminated, Ms. Scott's annual base salary was approximately $247,000. Ms. Scott's annual compensation (including bonus compensation) for the two years prior to her termination exceeded $300,000. In addition, Ms. Scott received substantial benefits by virtue of her employment and stature within the Company.

43.   In addition, WPIX's conduct, as described herein, has caused Ms. Scott to suffer severe mental pain and anguish for which she is entitled to be compensated.

---

[7]   Similar to Ms. Scott's termination, WPIX apparently announced that Mr. Marchiano voluntarily resigned when in fact he did not.

[8]   While employed in Tampa, Mr. Carey made the news headlines himself, after being involved in a hit-and-run accident which resulted in burglary, battery, and hit-and-run charges being filed against him. Mr. Carey was placed on administrative leave by his employer following this incident. Since becoming News Director at WPIX, Mr. Carey has been in the local headlines as well as a result of his retention of various personnel with checkered pasts. (There have been no less than four people hired in the five months since Carey assumed the position of News Director that have had prior encounters with the law, including a recent incident in which a reporter hired by Carey was arrested for assaulting a driver to the United Nations ambassador from Bermuda.)

[9]   Upon information and belief, the ratings for WPIX news have declined since Ms. Scott's termination.

N-80517_1.DOC

### First Claim for Relief: Age Discrimination Under the ADEA

44. Ms. Scott repeats the allegations contained in paragraphs 1 through 43 above.

45. At all relevant times, Ms. Scott was an "employee" under the ADEA, 29 U.S.C. § 630(f).

46. WPIX is an "employer" under the ADEA, 29 U.S.C. § 630(b).

47. As detailed above, WPIX has unlawfully discriminated against Ms. Scott on the basis of her age in violation of the ADEA.

48. By the reason of the foregoing, Ms. Scott suffered substantial damages. Accordingly, WPIX is liable to Ms. Scott for back pay and reinstatement and/or front pay, in amounts to be determined at trial, but in no event less than $1,500,000, plus interest, fees and costs, including an award for attorneys' fees.

49. WPIX's conduct was willful, entitling Ms. Scott to liquidated damages pursuant to 29 U.S.C. § 626(b).

### Second Claim for Relief: Age Discrimination in Violation of the New York City Human Rights Law

50. Ms. Scott repeats the allegations contained in paragraphs 1 through 49 above.

51. Ms. Scott is a "person" under § 8-102(1) of the New York City Administrative Code.

52. WPIX is an "employer" subject to the provisions of the New York City Human Rights Law under § 8-102(5) of the Administrative Code.

53. As detailed above, WPIX has intentionally discriminated against Ms. Scott on the basis of her age in violation of the New York City Human Rights Law.

54. As a result of the discrimination described above, Ms. Scott has suffered substantial damages. Accordingly, WPIX is liable to Ms. Scott for back pay and reinstatement and/or front pay and compensatory damages, including those resulting from Ms. Scott's

11

emotional distress and mental anguish, in amounts to be determined at trial, but in no event less than $1,500,000, plus interest, fees and costs, including an award for attorneys' fees.

53.    Based on the foregoing, Ms. Scott is also entitled to an award for punitive damages.

### Third Claim for Relief: Age Discrimination in Violation of the New York State Human Rights Law

54.    Ms. Scott repeats the allegations contained in paragraphs 1 through 53 above.

55.    At all relevant times, Ms. Scott has been an "employee" for purposes of § 296 of the New York State Human Rights Law.

56.    WPIX is an "employer" for purposes of § 292 of the New York State Human Rights Law.

57.    As detailed above, WPIX has unlawfully discriminated against Ms. Scott on the basis of her age in violation of § 296 of the New York State Human Rights Law.

58.    As a result of the discrimination above, Ms. Scott has suffered substantial damages. Accordingly, WPIX is liable to Ms. Scott for back pay and reinstatement/front pay and compensatory damages, including those resulting from Ms. Scott's emotional distress and mental anguish, in amounts to be determined at trial, but in no event less than $1,500,000, plus interest, fees and costs, including an award for attorneys' fees.

N-80517_1.DOC

N/A

**WHEREFORE**, Ms. Scott respectfully requests that this Court enter judgment in her favor and against WPIX, as follows:

(A)     On the First Claim for Relief for violation of the ADEA, for back pay and reinstatement and/or front pay, in amounts to be determined at trial, but in no event less than $1,500,000, plus interest, fees and costs, including an award for attorneys' fees, and an award for liquidated damages;

(B)     On the Second Claim for Relief for violation of the New York City Human Rights Law, for back pay and reinstatement and/or front pay and compensatory damages, including those resulting from Ms. Scott's emotional distress and mental anguish, in amounts to be determined at trial, but in no event less than $1,500,000, plus interest, fees and costs, including an award for attorneys' fees, as well as an award for punitive damages;

(C)     On the Third Claim for Relief for violation of the New York State Human Rights Law, for back pay and reinstatement and/or front pay and compensatory damages, including those resulting from Ms. Scott's emotional distress and mental anguish, in amounts to be determined at trial, but in no event less than $1,500,000, plus interest, fees and costs, including an award for attorneys' fees; and

(D)     For such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims and issues triable by a jury.

Dated: June 14, 2010

                              HAYNES AND BOONE, LLP
                              *Attorneys for Plaintiff*

By: _____
                              Kenneth J. Rubinstein (KR-1410)
                              1221 Avenue of the Americas, 26th Floor
                              New York, New York  10020
                              (212) 659-7300

N-80517_1.DOC