# SEYFARTH
ATTORNEYS SHAW LLP

620 Eighth Avenue
New York, New York 10018
(212) 218-5500
fax (212) 218-5526
www.seyfarth.com

Writer's direct phone
(212) 218-5611

Writer's e-mail
ecerasia@seyfarth.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/1/11

May 16, 2011

**BY HAND DELIVERY**

The Honorable William H. Pauley III
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   Karen Scott v. WPIX, Inc., 10-CIV-4622 (WHP)

Dear Judge Pauley:

Application granted. This Court will hold a pre-motion conference on June 24, 2011, at 11:00 a.m.

SO ORDERED:

_____
WILLIAM H. PAULEY III U.S.D.J.
6/1/11

On behalf of defendant WPIX, Inc., we respectfully request a conference to discuss its anticipated summary judgment motion as to the age discrimination claims in the Complaint.

**Factual Background:** Plaintiff Karen Scott was WPIX's News Director from 1996 until August 26, 2009, when WPIX notified her that it was terminating her employment for unsatisfactory performance. She was age 60 at the time. As the News Director, Ms. Scott was responsible for WPIX's news ratings, overall supervision of the News Department, including managing the performance of the employees who reported to her, managing to budget expectations and producing a profit, and developing and executing strategies to make WPIX's on-air and on-line news products the market leader.

From 2000 until her termination, Ms. Scott reported directly to WPIX's General Manager, Betty Ellen Berlamino. Dating back to at least 2004, Ms. Berlamino put Ms. Scott on notice that, as the News Director, she was ultimately responsible for WPIX's declining Nielsen ratings. Ratings are the life-blood of any television station because they determine how much a station can charge advertisers to air commercials – the higher the ratings, the more WPIX can charge advertisers for air time, thereby increasing its revenues. Conversely, low ratings result in lower revenue for WPIX. Despite Ms. Berlamino's numerous discussions with, and emails to, Ms. Scott concerning her need to improve WPIX's news ratings – which vacillated between barely acceptable and poor – Ms. Scott showed little initiative or ability to reverse the sharp decline in ratings and revenue. Ms. Scott seemed content to maintain the status quo as WPIX's news ratings and revenues deteriorated to wholly unacceptable levels by late-2009.

Ms. Scott was similarly deficient in managing personnel in the News Department. For instance, she failed to evaluate her on-air talent and staff to determine if the right employees

BRUSSELS  WASHINGTON, D.C.  SAN FRANCISCO  SACRAMENTO  NEW YORK  LOS ANGELES  HOUSTON  CHICAGO  BOSTON  ATLANTA



were in place to help WPIX succeed; she let poor performers fester and otherwise failed to hold employees accountable.

In late-2007, WPIX's parent company, Tribune Company, went through an ownership change, resulting in a new senior management team, which had a different view about running WPIX. That new senior leadership put tremendous pressure on Ms. Berlamino and Ms. Scott to turn around the sharp decline in news ratings and revenue. That pressure was further increased as a result of the recession and Tribune's Chapter 11 bankruptcy filing on December 8, 2008. By the end of 2008, Steve Charlier, Tribune's Senior Vice President for News Operations, began spending more time with Ms. Scott and the News Department at WPIX. Mr. Charlier quickly recognized Ms. Scott's deficiencies; he did not believe she was the right person to lead the news at WPIX. Consequently, he began to question Ms. Berlamino's decision to retain Ms. Scott as the News Director. Notably, Ms. Scott had a good working relationship with Mr. Charlier and admittedly does not know of any facts showing age discrimination by him. Ms. Berlamino defended Ms. Scott for many months, until mid-July 2009, when she finally agreed with Mr. Charlier's assessment and then decided to terminate Ms. Scott's employment – but only after first exploring whether she could put Ms. Scott on a performance improvement plan. Ms. Berlamino liked Ms. Scott and did not want to fire Ms. Scott, but felt she had no choice given the ratings and almost a $7 million loss in the news.

**Arguments:** Ms. Scott cannot establish a *prima facie* case of age discrimination because WPIX did not terminate her "under circumstances giving rise to an inference of discrimination." She simply has no competent evidence that her age was the "but for" cause or even a factor in the decision to terminate her employment, *Gross v. FBL Fin. Servs.*, 129 S. Ct. 2343, 2350 (2009), as demonstrated by each of the following:

Ms. Scott does not know of any facts evidencing that Mr. Charlier, who pushed Ms. Berlamino to make the decision to discharge Ms. Scott and would have fired Ms. Scott if Ms. Berlamino had refused to do so, discriminated against her because of her age. *See Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir. 1997) (affirming summary judgment dismissing age discrimination claim where there was no evidence of discrimination by decision-maker).

Ms. Berlamino's favorable treatment of Ms. Scott over the years, including, for example, approving of raises and bonuses, negates any inference of discrimination. *James v. New York Racing Ass'n*, 233 F.3d 149, 152-53 (2d Cir. 2000) (granting summary judgment dismissing age discrimination claims where there was prior favorable treatment of plaintiff).

Berlamino, then-age 50, also is a member of the same protected class, further dooming Ms. Scott's claims. *Adams v. Canon USA, Inc.*, 07-CIV-3512 (DRH), 2009 U.S. Dist. LEXIS 86722, at *14 (E.D.N.Y. Sept. 22, 2009) ("The fact that the decisionmaker is a member of Plaintiff's protected class not only weakens any suggestion of discrimination but strongly suggest[s] that invidious discrimination is unlikely.").

Ms. Scott's replacement, William Carey, was not "substantially younger" than her; he was age 51, which also undermines any inference of age discrimination. *McDermott v. New York City Hous. Dev. Corp.*, 10-CIV-2029 (HB), 2011 U.S. Dist. LEXIS 4349, at *14 (S.D.N.Y.



The Honorable William H. Pauley III
May 16, 2011
Page 3

Jan. 18, 2011) (no age discrimination where plaintiff replaced by someone ten years her junior who was "still a member of the protected class"). Even then, Mr. Charlier – who Ms. Scott does not accuse of age discrimination – and not Ms. Berlamino, made the decision to hire Mr. Carey.

Ms. Berlamino also terminated WPIX employees who were substantially younger than Ms. Scott, further supporting dismissal. *See Cobb v. Frontier Communs. of Rochester, Inc.*, 08-CIV-6030 (MAT), 2010 U.S. Dist. LEXIS 80465 (W.D.N.Y. Aug. 10, 2010) (fact that younger employees also were terminated based on performance undermines plaintiff's allegation that an employee's age was considered in decision-making process).

The EEOC's dismissal of Ms. Scott's charge – which was based on the same allegations and evidence here – on the ground that "there is insufficient evidence to indicate that [WPIX] treated [her] differently" because of her age, is compelling evidence that WPIX did not discriminate against her. *E.g., Bawa v. Brookhaven Nat'l Lab.*, 95-CIV-2472 (LDW), slip op. at 15 (E.D.N.Y. Oct 15, 1997) (relying on State Division determination in granting summary judgment dismissing discrimination claims), *aff'd*, 201 F.3d 430 (2d Cir. 1999) (table).

Even if Ms. Scott could establish a *prima facie* case of age discrimination, she cannot remotely prove that WPIX's legitimate reasons for her termination were false *and* that her age was the "but for" or real reason for her termination. *James*, 233 F.3d at 156-57. Indeed, Ms. Scott's only purported "evidence" of age discrimination by Ms. Berlamino is an alleged comment made to her by Ms. Berlamino in 2003 – *six years prior* to her termination – that she was "walking like a grandmother" prior to her surgery. Even assuming, *arguendo*, that this comment was made *and relates to age*, it is wholly irrelevant. *Alvarez v. Nicholson*, 03-CIV-4173 (RCC), 2005 U.S. Dist. LEXIS 45744, at *18 (S.D.N.Y. Aug. 3, 2005) ("verbal comments may only constitute evidence of discrimination when they are 'proximate in time to the adverse employment action'"). Nor can Ms. Scott rely on the alleged age-based comments by Ms. Berlamino concerning other WPIX employees, (*see* Compl., ¶ 40) – which Ms. Berlamino emphatically denies – as evidence of age discrimination *against her*. *Woroski v. Nashua Corp.*, 31 F.3d 105, 109-10 (2d Cir. 1994) (affirming summary judgment for employer even where plaintiffs advanced "some evidence" of age bias in the form of decision-maker's alleged age-based comments about others, holding that "some evidence is not sufficient to withstand a properly supported motion for summary judgment").

For each of these reasons, WPIX respectfully requests a pre-motion conference and to be relieved from filing a joint pre-trial order until after a ruling on the motion. Thank you for Your Honor's consideration of this request.

Respectfully submitted,

SEYFARTH SHAW LLP

*Edward Cerasia*
Edward Cerasia II

cc:   Kenneth Rubinstein, Esq. (By Email and U.S. Regular Mail)

# haynes*boone*

Direct Dial: 212-659-4980
Direct Fax: 212-884-8241
ken.rubinstein@haynesboone.com

May 23, 2011

**By Federal Express**

Honorable William H. Pauley
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 11D
New York, New York 10007

[Stamp: RECEIVED — CHAMBERS OF WILLIAM H. PAULEY U.S.D.J.]

Re:   *Scott v. WPIX, Inc. (10 CV 4622)*

Dear Judge Pauley:

We represent Karen Scott, plaintiff in the above-referenced action. This responds to defendant's May 16, 2011 letter requesting a conference to discuss defendant's contemplated summary judgment motion.

At the time Ms. Scott was terminated (August 26, 2009), she was qualified to continue as the News Director for WPIX, a position she occupied for 16 years. The purported legitimate, non-discriminatory reasons provided by defendant for her termination are mere pretext and are belied by the evidence adduced during discovery.

At this juncture, plaintiff does not believe it necessary to respond in detail to each allegation defendant makes in its letter. It is telling, however, that the story defendant now concocts as to how Ms. Scott's termination transpired is not supported by any contemporaneous documentation (and is not the story defendant told the EEOC). Indeed, Mr. Charlier -- who defendant now references as a key person behind the decision to terminate Ms. Scott -- was *nowhere* mentioned in defendant's submission to the EEOC.

On the other hand, there is ample evidence that supports plaintiff's claims that she was wrongfully terminated due to her age. By way of example, the evidence adduced during discovery establishes that:

N-131789_2.DOC

Haynes and Boone, LLP
Attorneys and Counselors
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
Phone: 212.659.7300
Fax: 212.918.8989
www.haynesboone.com

**haynes*boone***

Honorable William H. Pauley
May 23, 2011
Page 2

- Ms. Scott was a well-respected, highly accomplished and decorated News Director for almost 16 years -- under her stewardship, the WPIX news division received more local/national awards than any other major network in the metropolitan area;

- at the time Ms. Scott was terminated, there was nothing contained in her personnel file that supported the decision to terminate her and no warning was given to Ms. Scott about her job status prior to the time she was terminated;

- the testimony of Betty Ellen Berlamino, the General Manager of WPIX during the relevant time frame[1] and the decision maker with respect to Ms. Scott's termination, regarding Ms. Scott's termination and the events that preceded the termination was inconsistent with testimony provided by the managers of human resources for WPIX and its parent, The Tribune Company;

- a key document defendant relies upon to argue that there was a legitimate non-discriminatory reason for Ms. Scott's termination is a November 2, 2008 memo in which Ms. Berlamino purportedly documented a meeting with Ms. Scott wherein she warned Ms. Scott that her "job was in jeopardy." As revealed during discovery, this meeting never occurred and the memo was manufactured by Ms. Berlamino to support defendant's unlawful decision to terminate Ms. Scott;

- in addition to Ms. Scott's testimony concerning age-related comments and age-related employment actions taken by Ms. Berlamino, *current* employees testified that Ms. Berlamino treated older employees unfairly and there are various documents in which Ms. Berlamino and others discuss defendant's pattern of terminating or modifying the employment of older employees;[2]

---

[1]   Upon her termination in June 2010, Ms. Berlamino threatened to take legal action against WPIX. WPIX and Ms. Berlamino entered into a Separation Agreement wherein Ms. Berlamino agreed to release her threatened claims against WPIX in exchange for certain consideration including, without limitation, being paid for her time assisting in this litigation and WPIX covering the costs of the defense in a suit brought by former employees against Ms. Berlamino for age discrimination.

[2]   *See, e.g., Leibowitz v. Cornell Univ.*, 584 F.3d 487, 494 (2d Cir. 2009) ("circumstances giving rise to an inference of discrimination may include . . . evidence of actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus."); *Tomassi v. Insignia Financial Group*, 478 F.3d 111 (2d Cir. 2007) (age-related remarks made by person involved in decision making process indicia of discrimination); *Sprint v. Mendelsohn*, 552 U.S. 379 (2008) (evidence of non-parties alleging age discrimination at the hands of supervisors who played no role in the challenged evidence may still be admissible to prove discrimination).

**haynes*boone***

Honorable William H. Pauley
May 23, 2011
Page 3

- contrary to representations in WPIX's letter, the evidence revealed that the ratings between 2004 and Ms. Scott's termination did not "vacillate between barely acceptable and poor" and the reasons underlying 2009 ratings issues were not attributable to Ms. Scott's efforts and performance.

This evidence is a mere sampling of what plaintiff will present in opposition to any motion for summary judgment and at trial. The conclusion to be drawn from the evidence is that Ms. Scott was unlawfully terminated because of her age.

The case law defendant cited as purported support for its position is misguided. Notably, defendant does not contest that Ms. Scott satisfies the first three elements of a *prima facie* case for age discrimination. Rather, it contends that she can not satisfy the fourth element, *i.e.,* that her discharge occurred under circumstances giving rise to an inference of discrimination on the basis of age. The Second Circuit has noted that, "[t]he burden of establishing a *prima facie* case is not onerous, and has been frequently described as minimal." *Scaria v. Rubin*, 117 F.3d 652, 654 (2d Cir. 1997) (*citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)). Furthermore, a "prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability," and it is error to "proceed[] from the premise that a plaintiff must always introduce additional, independent evidence of discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000). Based on the evidence, at a minimum, there are questions of fact as to whether Ms. Scott was terminated because of her age.

Finally, defendant's reference to the EEOC's "dismissal" is of no probative value. The EEOC did not conduct any investigation into Ms. Scott's claims -- and therefore was not privy to any of the information revealed during discovery -- and issued the letter *after* being apprised that Ms. Scott had commenced an action in this Court.[3] *See, e.g., Paolitto v. John E & C., Inc.*, 151 F.3d 60 (2d Cir. 1998) (noting that employment-agency determinations "are not homogenous products; they vary greatly in quality and factual detail" and affirming exclusion of state employment agency's findings); *City of New York v. Pullman Inc.*, 662 F.2d 910, 915 (2d Cir. 1981) (affirming exclusion of a federal agency's report because of "the likelihood that it would confuse the jury and protract the proceedings outweighed its probative value").

---

[3]   As an example of the EEOC's lack of insight into this matter, in the EEOC letter, they referred to Ms. Scott's claim as one for "disability" rather than as a claim based on age discrimination.

N-131789_2.DOC

**haynes**boone

Honorable William H. Pauley
May 23, 2011
Page 4


For the foregoing reasons, among others, plaintiff believes that summary judgment is not warranted and that this matter should proceed to a trial by jury.

Thank you for your consideration.

Respectfully submitted,

Kenneth J. Rubinstein

cc: Edward Cerasia II, Esq.
    Seyfarth Shaw LLP
    *Counsel for defendant*
    620 Eighth Avenue
    New York, New York 10018
    (*By E-Mail*)

N-131789_2.DOC