UNITED STATES DISTRICT OF NEW YORK
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
KAREN SCOTT,                                        :
                                                    :
                    Plaintiff,                      :
                                                    :
         -against-                                  :        10-CIV-4622 (WHP)
                                                    :
WPIX, INC.,                                         :
                                                    :
                    Defendant.                      :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## DEFENDANT'S MEMORANDUM OF LAW IN
## <u>SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>


Dated:  New York, New York
        August 12, 2011


Edward Cerasia II
Anjanette Cabrera
Jeremi L. Chylinski
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500

Attorneys for Defendant
*WPIX, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.............................................................................................ii

I.      PRELIMINARY STATEMENT.................................................................................1

II.     STATEMENT OF UNDISPUTED FACTS.................................................................3

III.    ARGUMENT.............................................................................................................8

        A.    SUMMARY JUDGMENT STANDARD...................................................8

        B.    SCOTT HAS NO EVIDENCE TO SUPPORT HER
              DISCRIMINATORY TERMINATION CLAIMS .................................8

              1.   Scott Cannot Establish A *Prima Facie* Case ...................................10

              2.   WPIX Had A Legitimate, Non-discriminatory Reason
                   For Terminating Scott's Employment ............................................17

              3.   Scott Has No Evidence That Her Age Was The "But For"
                   Cause Of, Or Even A Motivating Factor In, Her Termination..........18

                   a.   Scott Cannot Second-Guess WPIX's Termination Decision..............19

                   b.   The Alleged Stray Comments By Berlamino Do Not
                        Save Scott's Claims From Dismissal.......................................20

IV.     CONCLUSION ......................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Canon USA, Inc.*,
   No. 07-CV-3512 (DRH), 2009 U.S. Dist. LEXIS 86722 (E.D.N.Y. Sept. 22, 2009) ............. 12

*Alfano v. Costello*,
   294 F.3d 365 (2d Cir. 2002) ............................................................................................... 19

*Alvarez v. Nicholson*,
   No. 03-CIV-4173 (RCC), 2005 U.S. Dist. LEXIS 45744 (S.D.N.Y. Aug. 3, 2005) ............... 16

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .............................................................................................................. 8

*Baguer v. Spanish Broad. Sys.*,
   No. 04-CV-8393 (RJS), 2010 U.S. Dist. LEXIS 69212 (S.D.N.Y. Sept. 20, 2007) ......... 13, 19

*Campbell v. Alliance Nat'l Inc.*,
   107 F. Supp. 2d 234 (S.D.N.Y. 2000) .................................................................................. 16

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .............................................................................................................. 8

*Chastven v. CIGNA Corp.*,
   No. 97-CV-6013 (RPP), 1999 U.S. Dist. LEXIS 17727 (S.D.N.Y. Nov. 10, 1999) ............... 17

*Cobb v. Frontier Communs. of Rochester, Inc.*,
   No. 08-CIV-6030 (MAT), 2010 U.S. Dist. LEXIS 80465 (W.D.N.Y. Aug. 10, 2010) .......... 14

*Danzer v. Norden Sys.*,
   151 F.3d 50 (2d Cir. 1998) ................................................................................................... 16

*Davis v. Avaya, Inc.*,
   295 Fed. Appx. 380 (2d Cir. 2008) ....................................................................................... 18

*Duprey v. Prudential Ins. Co. of Am.*,
   910 F. Supp. 879 (N.D.N.Y. 1996) .................................................................................... 11-12

*Gambello v. Time Warner Communs., Inc.*,
   186 F. Supp. 2d 209 (E.D.N.Y. 2002) .................................................................................. 18

*Gene Codes Forensics, Inc. v. City of New York*,
   No. 10-CV-1641 (NRB), 2011 U.S. Dist. LEXIS 72130 (S.D.N.Y. June 24, 2011) .............. 20

*Gorzynski v. JetBlue Airways Corp.*,
   596 F.3d 93 (2d Cir. 2010) ............................................................................8, 9

*Grady v. Affiliated Cent.*,
   130 F.3d 553 (2d Cir. 1997) ...................................................................10, 11, 13

*Gross v. FBL Fin. Servs.*,
   129 S. Ct. 2343 (2009) ...................................................................................9

*Halbrook v. Reichhold Chems., Inc.*,
   766 F. Supp. 1290 (S.D.N.Y. 1991), *aff'd*, 956 F.2d 1159 (2d Cir .1992).............................9

*Hammer v. FedEx*,
   No. 07-CIV-1445 (BMC), 2008 U.S. Dist. LEXIS 41689 (E.D.N.Y. May 28, 2008) ...........14

*Haskell v. Kaman Corp.*,
   743 F.2d 113 (2d Cir. 1984) ............................................................................21

*Hatter v. Fulton*,
   No. 92-CV-6065 (WK), 1997 U.S. Dist. LEXIS 10429 (S.D.N.Y. July 21, 1997),
   *aff'd*, 165 F.3d 14 (2d Cir. 1998)......................................................................17

*Holowecki v. FedEx*,
   382 Fed. Appx. 42 (2d Cir. 2010)...............................................................8, 9, 18

*Holowecki v. FedEx*,
   644 F. Supp. 2d 338 (S.D.N.Y. 2009) .............................................................9, 10 11

*Hong v. Children's Mem'l Hosp.*,
   993 F.2d 1257 (7th Cir. 1993), *cert. denied*, 511 U.S. 1005,
   *reh'g denied*, 512 U.S. 1214 (1994) ....................................................................11

*James v. N.Y. Racing Ass'n*,
   233 F.3d 149 (2d Cir. 2000) ..........................................................................9, 12

*Ko Sheng Chuang v. T.W. Wang Inc.*,
   647 F. Supp. 2d 221 (E.D.N.Y. 2009) ....................................................................8

*LaMarch v. Tishman Speyer Properties, L.P.*,
   No. 03-CV-5246 (CBA), 2006 U.S. Dist. LEXIS 55006 (E.D.N.Y. Aug. 7, 2006) ..............16

*LeBlanc v. Great Am. Ins. Co.*,
   6 F.3d 836 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018 (1994)..................................21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .......................................................................................8

*Mattera v. JPMorgan Chase Corp.*,
 740 F. Supp. 2d 561 (S.D.N.Y. 2010) ...................................................................13, 19

*McDermott v. N.Y. City Hous. Dev. Corp.*,
 No. 10-CIV-2029 (HB), 2011 U.S. Dist. LEXIS 4349 (S.D.N.Y. Jan. 18, 2011)................... 13

*McDonnell Douglas Corp. v. Green*,
 411 U.S. 792 (1973) ............................................................................................8

*Moorhouse v. Boeing Co.*,
 501 F. Supp. 390 (E.D. Pa.), *aff'd*, 639 F.2d 774 (3d Cir. 1980) ...........................................21

*Ogiba v. Business Servs. Co.*,
 20 F. Supp. 2d 379 (N.D.N.Y. 1998)..................................................................................17

*Pasha v. William M. Mercer Consulting, Inc.*,
 No. 00-CV-8362 (RWS), 2004 U.S. Dist. LEXIS 1226 (S.D.N.Y. Feb. 2, 2004), *aff'd*,
 135 Fed. Appx. 489 (2d Cir. 2005).................................................................................16-17

*Pergament v. FedEx*,
 No. 03-CV-01106, 2007 U.S. Dist. LEXIS 23732 (E.D.N.Y. Mar. 30, 2007)........................ 19

*Ponticelli v. Zurich Am. Ins. Group*,
 16 F. Supp. 2d 414 (S.D.N.Y. 1998) ...............................................................................11

*Posner v. Sprint/United Mgmt. Co.*,
 478 F. Supp. 2d 550 (S.D.N.Y. 2007) ...............................................................................16

*Pronin v. Raffi Custom Photo Lab, Inc.*,
 383 F. Supp. 2d 628 (S.D.N.Y. 2005) ...............................................................................16

*Saulpaugh v. Monroe Cmty. Hosp.*,
 4 F.3d 134 (2d Cir. 1993) ...............................................................................................18

*Subramanian v. Prudential Secs., Inc.*,
 No. 01-CV-6500 (SJF), 2003 U.S. Dist. LEXIS 23231 (E.D.N.Y. Nov. 20, 2003)................ 14

*Sullivan v. Brodsky*,
 380 Fed. Appx. 21 (2d Cir. 2010).......................................................................................18

*Texas Dep't of Cmty. Affairs v. Burdine*,
 450 U.S. 248 (1981) ..........................................................................................................9

*Warren v. Chem. Bank*,
 No. 96-CV-6075 (BSJ), 1999 U.S. Dist. LEXIS 19732 (S.D.N.Y. Dec. 17, 1999)................ 17

*Waters v. Gen. Bd. of Global Ministries*,
 No. 09-CV-7241 (NRB), 2011 U.S. Dist. LEXIS 20541 (S.D.N.Y. Feb. 25, 2011)............... 12

*Watt v. N.Y. Botanical Garden*,
   No. 98 Civ. 1095 (BSJ), 2000 WL 193626 (E.D.N.Y. Feb. 16, 2000) ...............................9-10

*Williams v. Brooklyn Union Gas Co.*,
   819 F. Supp. 214 (E.D.N.Y. 1993) .....................................................................................11

*Woroski v. Nashua Corp.*,
   31 F.3d 105 (2d Cir. 1994) .........................................................................................21, 22

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ...................................................................................................................8

Fed. R. Evid. 403 ......................................................................................................................21

Defendant WPIX, Inc. ("WPIX") respectfully submits this memorandum of law in support of its motion for summary judgment seeking dismissal of plaintiff Karen Scott's ("Scott's") age discrimination claims in the Complaint.

## I.   **PRELIMINARY STATEMENT**

The undisputed record in this straight-forward case shows that WPIX terminated Scott's employment because of her unsatisfactory performance as the News Director – resulting in declining Nielsen ratings and net losses in excess of $10 million over two years for WPIX's News programs, which clearly demonstrated that she was not the right person to lead the News Department.  In response to her termination, Scott filed this lawsuit, in which she claims that WPIX terminated her employment because of her age.  As demonstrated below, the Court should grant summary judgment in favor of WPIX because Scott has no competent evidence from which a reasonable jury could find that her age was the "but for" cause of, or any factor whatsoever in, WPIX's decision to terminate her employment in August 2009.

Scott admits that she had performance deficiencies in her role as the News Director, including a drastic decline in the Nielsen ratings and net losses over the years.  She also has no competent evidence of age discrimination directed at her by her boss and the ultimate decision-maker, Betty Ellen Berlamino ("Berlamino"), who was then age 50 and had admittedly treated Scott favorably over the years.  Tellingly, Scott admits that, between 2000 and December 30, 2008, Berlamino did *not* make *any* decisions with regard to her employment on the basis of her age, and the only adverse decision after that point was her termination in August 2009, for performance-related reasons.  In that connection, Scott also admits that up until the day she was terminated, she had a good working relationship with Berlamino and there was no hostility or animosity between them.  Scott further admits that she has no reason to believe that she was discriminated against by Steve Charlier ("Charlier"), the Senior Vice President of News and

Operations for Tribune Co., WPIX's parent, who had been pushing Berlamino for over 7 months to replace Scott as the News Director because, from his first visit to WPIX in 2008, he did not believe that Scott was the right person to lead the News Department, or by Myrna Ramirez ("Ramirez"), the Vice President of Human Resources for Tribune Broadcasting, who reviewed and approved of the termination decision.  Scott admittedly had a good working relationship with Charlier and Ramirez, too.

On top of these dispositive admissions by Scott, the record includes other undisputed facts showing that she was *not* terminated under circumstances giving rise to an inference of age discrimination and that her age was *not* the "but for" cause of her termination.  For instance, Charlier decided to replace Scott with someone who was almost age 52 (merely 8½ years younger than Scott, who was just age 60 at the time of her termination); just months before Scott's termination, Berlamino fired for performance reasons a manager who was 17 years younger than Scott; and, most notably, in January 2011, the U.S. Equal Employment Opportunity Commission ("EEOC") determined, *based on the same allegations before this Court*, that WPIX did not terminate Scott's employment because of her age.

In the end, Scott's age discrimination claims rest upon pure speculation, her disagreement with WPIX's legitimate decision to terminate her employment, and her allegations that Berlamino made stray, ageist remarks about other WPIX employees over the years (comments that Scott, despite her obligation, admittedly did not report to superiors or human resources professionals, even when those comments allegedly were made about her friends and long-term colleagues).  As demonstrated below, none of this permits Scott to withstand summary judgment.

In short, no reasonable jury could conclude that Scott's age was the "but for" cause of her termination, or even a motivating factor in that decision. Consequently, summary judgment in favor of WPIX is warranted.

## II.    STATEMENT OF UNDISPUTED FACTS

The undisputed material facts in this case are set forth in WPIX's Local Civil Rule 56.1 Statement of Undisputed Material Facts ("Def.'s 56.1"). For the Court's convenience, WPIX incorporates herein those undisputed facts and provides the following summary.

Scott began her employment with WPIX in 1993, as an Executive Producer. (Def.'s 56.1, ¶ 1.) In 1996, when Scott was age 47, WPIX promoted her to be its News Director and she continued in that position until August 2009, when her employment was terminated for unsatisfactory performance. (*Id.*, ¶¶ 1-2, 84-91, 102-03, 108.) As the News Director, Scott was responsible for the overall operation of WPIX's News Department, including the News ratings, the profit and loss of the Department, overall supervision of the Department, managing the performance of the approximately 120 employees who reported to her, and developing and executing strategies to make WPIX's News product the audience leader in the New York market. (*Id.*, ¶¶ 4-6.)

From 2000 until her termination date, Scott reported directly to Berlamino, who was WPIX's President and General Manager until June 7, 2010, when Tribune senior management terminated Berlamino's employment. (*Id.*, ¶¶ 7, 9, 11.) Ironically, Berlamino had predicted in late-2008, that because of the decline in Nielsen ratings, Tribune would let Scott go first, and then let her go. (*Id.*, ¶¶ 12, 64.)

As early as 2004, Berlamino put Scott on notice that, as the News Director, Scott was ultimately responsible for WPIX's declining Nielsen ratings. (*E.g.*, *id.*, ¶¶ 25, 37-46.) Nielsen ratings are the life-blood of any television station. (*Id.*, ¶¶ 16-17.) Those ratings determine how

much a station can charge advertisers to air commercials – the higher the ratings, the more WPIX can charge advertisers for air time, thereby increasing WPIX's revenues.  (*Id.*, ¶ 17.) Conversely, low ratings result in lower revenue for WPIX.  (*See id.*, ¶¶ 17, 23.)  Over time, Berlamino repeatedly warned Scott that she needed to improve WPIX's News ratings, which steadily declined under Scott's leadership to a point where there was a 20 to 40 percent decline by the end of 2008.  (*E.g., id.*, ¶¶ 26, 29, 36-46, 50-52, 59-65, 74-75, 79, 83, 87.)  The undisputed record is replete with years of e-mails and discussions about Scott's need to improve the ratings, and make necessary changes to grow the ratings and revenue for WPIX's News.  (*Id.*) Nevertheless, despite the ratings decline and Scott's inability to reverse that trend, Berlamino treated Scott favorably over the years; she gave Scott raises and bonuses (although smaller than her target) and protected Scott's job in the face of increasing pressure from Tribune senior management to replace Scott starting in 2008.  (*Id.*, ¶¶ 80, 82, 114-17.)

Most tellingly, Scott admits that, between 2000 and December 30, 2008, Berlamino did *not* make *any* decisions with regard to her employment on the basis of her age, (*id.*, ¶ 13, 14, 35, 42, 129), and the only adverse decision after that point was her termination in August 2009, for performance-related reasons, (*id.*, ¶¶ 84-91, 102-03).  Scott also admits that up until the day she was terminated, she enjoyed a good working relationship with Berlamino and there was no hostility or animosity between them.  (*Id.*, ¶¶ 13, 15.)

In late-2007, Tribune was the target of a leveraged buyout, resulting in new majority owners who had a new vision for the television stations and started installing their own senior management team.  (*Id.*, ¶¶ 27, 29, 31.)  In early-2008, Tribune hired Steve Charlier as its Senior Vice President of News and Operations out of Chicago, and put him in charge of turning around the News at WPIX by increasing the Nielsen ratings, improving the overall efficiency and

growing revenue for the News Department.  (*Id.*, ¶ 31.)  Charlier first visited WPIX in late-2008,

and continued to visit approximately once every two months to tour the station, get to know

Scott and the employees, and evaluate the on-air News product and the technical product behind

the scenes.  (*Id.*, ¶ 34.)  Scott interacted with Charlier during his visits to WPIX and on

conference calls.  (*Id.*, ¶ 54.)  Notably, there was no animosity or hostility between them, and

Scott acknowledges that Charlier never did anything toward her that she believed was unfair or

discriminatory because of her age.  (*Id.*)

As early as his first visit to WPIX in late-2008, Charlier questioned Berlamino – his

primary point of contact at WPIX – as to whether Scott was the right person for the News

Director job.  (*Id.*, ¶¶ 32, 53.)  He viewed Scott as practicing "News 101" only – just doing the

basics.  (*Id.*, ¶¶ 53, 55.)  Charlier continued to express his doubts about Scott's ability to increase

ratings and make the News profitable over the next several months.  (*Id.*, ¶¶ 57-58, 69-71, 80-81,

84-85.)  Yet, Berlamino continually defended Scott and told Charlier that she believed Scott was

the right person for the job.  (*Id.*, ¶¶ 80, 82.)  Charlier's doubts were justified:  over the lasts two

years of Scott's employment (2008 and 2009), the Nielsen ratings for WPIX's News programs

(both morning and evening shows) had decreased 20 to 40 percent and, for the first time, the

News at Ten ranked last in the New York market.  (*Id.*, ¶¶ 63, 65, 87, 97-98.)  That dramatic

decrease resulted in a loss of approximately $10 million dollars over the course of two years –

over $3 million in 2008 and $7 million in 2009.  (*Id.*)  Consequently, it was clear that a change in

leadership was necessary.  (*Id.*, ¶¶ 84-86.)

By early-2009, Tribune management also started taking on a more active role with

WPIX's personnel decisions, and Berlamino was told that her role was to implement Tribune's

personnel decisions going forward.  (*Id.*, ¶ 72.)  That was a change from the autonomy that

Berlamino had enjoyed in the past.  (*Id.*)  In addition to new senior leadership at Tribune taking on an active role at WPIX, the economic recession also took its toll on WPIX.  (*Id.*, ¶ 30.)  In December 2008, Tribune and WPIX had filed for Chapter 11 bankruptcy.  (*Id.*)  These economic conditions put even more pressure on WPIX's News Department to turn a profit and change the direction of its News programs.  (*Id.*)

By early-June 2009, as the Nielsen ratings continued to decline and Scott failed to make necessary expense reductions, Charlier was spending more time at WPIX and continued to tell Berlamino that Scott was not the right person for the job.  (*Id.*, ¶¶ 80-81, 85.)  Tribune's senior management was growing impatient.  (*Id.*)  Finally, on July 14, 2009, Charlier met with Berlamino and "became more assertive as to what Karen's future role would be, and express[ed] that [he] didn't think [Scott] was the person to take the product forward to make the changes [WPIX] needed to make to build the station up and grow the ratings, the revenue."  (*Id.*, ¶ 84.)  At that time, Berlamino realized that the declining ratings and the resulting negative cash flow over the past few years meant that she could no longer make excuses for Scott, and therefore she reluctantly agreed with Charlier that a change had to be made.  (*Id.* ¶ 86.)  Unbeknownst to Berlamino, Charlier decided at that point that, had she continued to defend Scott's employment, he was going to move forward with Scott's termination in any event because WPIX was in a ratings and financial crisis.  (*Id.*, ¶ 85.)

But, being Scott's champion until the very end, Berlamino suggested to Charlier that, instead of firing Scott, WPIX could place her on a Performance Improvement Plan ("PIP").  (*Id.*, ¶ 88.)  Charlier did not agree.  (*Id.*)  In his opinion, a PIP would not resolve Scott's issues, given the time and energy Berlamino spent over the past few years coaching Scott to improve her performance.  (*Id.*)  Charlier nonetheless suggested that Berlamino contact Myrna Ramirez, Vice

President of Human Resources at Tribune Broadcasting, to discuss the possibility of a PIP for Scott.  (*Id.*, ¶ 89.)  Ramirez agreed with Charlier that a PIP was not the proper course of action, particularly given that Tribune senior management no longer had any confidence in Scott's ability to lead the newsroom and reverse the ratings decline.  (*Id.*, ¶ 91.)

WPIX did not immediately terminate Scott's employment in July 2009, because Berlamino was departing for a two-week vacation and did not think it was appropriate to terminate Scott before she left.  (*Id.*, ¶ 92.)  Nor did WPIX terminate Scott immediately upon Berlamino's return from vacation at the beginning of August 2009, because Berlamino hoped that she would not have to go through with it.   (*Id.*, ¶ 96.)  After further discussions with Ramirez and a review of the News' financial condition and ratings, however, Berlamino finally made the decision to terminate Scott's employment.  (*Id.*, ¶ 103.)  Berlamino was age 50 at that time.  (*Id.*, ¶ 8.)

On August 26, 2009, Berlamino asked Scott to meet with her in a conference room at WPIX and, along with Ramirez, informed Scott that WPIX was terminating her employment.  (*Id.*, ¶¶ 106, 108.)  Reading from a "script" prepared by Ramirez with advice from one of Tribune's in-house employment lawyers, Berlamino generally informed Scott that the termination decision was based on Scott's performance deficiencies and the declining ratings, and that it was time for WPIX to make a change.  (*Id.*, ¶ 108.)

On June 14, 2010, Scott filed her Complaint with this Court.  (Declaration of Edward Cerasia II, Esq. ("Cerasia Decl.") at Ex. X.)  In her three-count Complaint, Scott alleges that WPIX terminated her employment because of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law ("NYSHRL"), and the

New York City Human Rights Law ("NYCHRL").  (*Id.*)  As demonstrated below, this case is ripe for summary judgment.

### III.   ARGUMENT

#### A.   SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment where, as here, the pleadings, depositions, affidavits, and other discovery establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  The moving party bears the initial responsibility of identifying the bases for its motion and those portions of the record that demonstrate the absence of a genuine factual issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies this burden, the non-moving party must proffer admissible evidence demonstrating that a trial is required because disputed issues of material fact exist.  *Liberty Lobby*, 477 U.S. at 249.  For Scott to survive summary judgment, she "may not rely on conclusory allegations or unsubstantiated speculation."  *Ko Sheng Chuang v. T.W. Wang Inc.*, 647 F. Supp. 2d 221, 225 (E.D.N.Y. 2009) (citing *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).  Rather, she must put forward sufficient admissible evidence from which a reasonable juror could return a verdict in her favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

#### B.   SCOTT HAS NO EVIDENCE TO SUPPORT HER DISCRIMINATORY TERMINATION CLAIMS

In deciding this motion, the Court analyzes Scott's age discrimination claims in accordance with the three-step burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Holowecki v. FedEx*, 382 Fed. Appx. 42, 45 (2d Cir. 2010) (Summary Order); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) ("[W]e remain bound by, and indeed see no reason to jettison, the burden-shifting framework for ADEA

cases that has been consistently employed in our Circuit.").  Under this analysis, Scott bears the

initial burden of establishing a *prima facie* case of age discrimination.  If the Court determines

that Scott can establish a *prima facie* case, then WPIX can rebut that showing by articulating a

legitimate, non-discriminatory reason for her termination.  *Texas Dep't of Cmty. Affairs v.*

*Burdine*, 450 U.S. 248, 253 (1981).  Scott bears the ultimate burden of showing that WPIX's

reason for terminating her employment was false *and* that the real reason for that decision was

age discrimination.  *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 156-57 (2d Cir. 2000); *see also*

*Holowecki*, 382 Fed. Appx. at 45.  "In order to satisfy [her] burden at the final stage, [Scott] must

offer evidence that age discrimination was the 'but-for' cause" of her termination.  *Holowecki*,

382 Fed. Appx. at 45 (citing *Gross v. FBL Fin. Servs.*, 129 S. Ct. 2343, 2350 (2009)); *see also*

*Gorzynski*, 596 F.3d at 106 n.6 ("[W]e assume, without deciding, that the Supreme Court's

*Gross* decision affects the scope of the NYHRL law as well as the ADEA.").[1]  Where, as here,

the defendant goes beyond merely articulating a non-discriminatory reason "to substantiating

that reason by providing that it has a sound and factually supported basis, [the plaintiff's] task of

showing that this reason was a pretext will be more difficult."  *Halbrook v. Reichhold Chems.,*

*Inc.*, 766 F. Supp. 1290, 1295 (S.D.N.Y. 1991) (citation omitted), *aff'd*, 956 F.2d 1159 (2d Cir.

1992) (table); *Watt v. N.Y. Botanical Garden*, No. 98 Civ. 1095 (BSJ), 2000 WL 193626, at *6

(E.D.N.Y. Feb. 16, 2000) (granting summary judgment; plaintiff failed to meet the "formidable

task in endeavoring to show that the asserted reason for her termination was false and that the

---

[1]      Even if the "but for" standard in *Gross* does not apply to Scott's NYCHRL age discrimination
claim, summary judgment is still warranted here because, as demonstrated below, she has no evidence
that her age was any factor, let alone "a motivating factor," in the decision to terminate her employment.
*See, e.g., Holowecki v. FedEx*, 644 F. Supp. 2d 338, 352 (S.D.N.Y. 2009) (granting summary judgment
under *Gross* standard, but also noting that summary judgment was required under "*pre-Gross* legal
standards"), *aff'd*, 382 Fed. Appx. 42 (2d Cir. 2010) (Summary Order).

9

[defendant's] motivation was discriminatory" where defendant offered "abundance of evidence presented . . . in support of its motion") (quotations omitted).

As demonstrated below, Scott cannot establish a *prima facie* case of discriminatory discharge.  Even if she could do so, she has no evidence that WPIX's reason for terminating her employment – unsatisfactory job performance resulting in declining ratings and net losses for the News and an honest belief that she was not the right person to lead the News Department – was false *and* that the real reason for that decision was age discrimination.  In short, Scott has no evidence that her age was the "but for" cause of the decision to terminate her employment, or even a motivating factor in that decision.

### 1.  Scott Cannot Establish A *Prima Facie* Case

To establish a *prima facie* case of age discrimination in connection with her discharge, Scott must show that she was terminated "under circumstances giving rise to an inference of discrimination." *Grady v. Affiliated Cent.*, 130 F.3d 553, 559 (2d Cir. 1997); *Holowecki*, 644 F. Supp. 2d at 352-60 (granting summary judgment dismissing plaintiffs' age discrimination claims for failure to show they were terminated under circumstances giving rise to inference of age discrimination).  This Scott cannot do for each of the reasons below.

First, the record contains undisputed evidence that it was Scott's unsatisfactory work performance – and not her age – that led to her termination in August 2009.  (Def.'s 56.1, ¶¶ 13-15, 26, 29, 35-108.)  In fact, the Nielsen ratings for the News decreased dramatically over the last two years of Scott's employment as the News Director, resulting in WPIX being in last place at times compared to its New York competitors and a loss of over $10 million in 2008 and 2009. (*Id.*, ¶¶ 63, 65, 87, 97-98.)  Scott's acknowledgment of these facts shows, standing alone, that she cannot prove that her age was the "but for" cause of her performance deficiencies, the ratings declines or loss of money – let alone the "but for" cause of her termination.  The mere fact that

Scott was age 60 at the time of her termination does not prove age discrimination. *E.g.*, *Williams v. Brooklyn Union Gas Co.*, 819 F. Supp. 214, 225 (E.D.N.Y. 1993) ("[P]laintiff's age, standing alone, is insufficient to satisfy his burden of proof.").

Second, Scott's age discrimination claims rest upon pure speculation; she has no competent evidence of any age discrimination toward her by Berlamino. (Def.'s 56.1, ¶¶ 13-15, 35.) Indeed, she admits that, between 2000 and December 30, 2008, Berlamino did *not* make *any* decisions with regard to her employment on the basis of her age, (*id.*, ¶ 14), and the only adverse decision after that point was her termination. Moreover, Scott admits that up until the date of her termination in late-August 2009, she and Berlamino had a good working relationship and there was no hostility or animosity between them. (*Id.*, ¶¶ 13, 15.) Scott's admissions and the lack of evidence refute her age discrimination claims. *See Grady*, 130 F.3d at 561 (affirming summary judgment, concluding no inference of age discrimination where plaintiff "could not recall any action or statement by [decision-maker] that showed age discrimination" toward her); *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1266 (7th Cir. 1993) (it is "implausible that [plaintiff's supervisor] would begin to treat the plaintiff in a pejorative manner because of the plaintiff's national origin after . . . a basically satisfactory and uneventful working relationship"), *cert. denied*, 511 U.S. 1005, *reh'g denied*, 512 U.S. 1214 (1994); *Holowecki*, 644 F. Supp. 2d at 353; *Ponticelli v. Zurich Am. Ins. Group*, 16 F. Supp. 2d 414, 427 (S.D.N.Y. 1998). Likewise, Scott has no evidence of age discrimination by Charlier – who continually told and ultimately convinced Berlamino that Scott was not the right person to lead the News Department, (Def.'s 56.1, ¶ 54) – or by Ramirez, who reviewed and supported the termination decision instead of putting Scott on a PIP, (*id.*, ¶¶ 91, 104). These facts further show that Scott cannot raise an inference of age discrimination. *See*, *e.g.*, *See Grady*, 130 F.3d at 553; *Duprey v. Prudential Ins.*

11

*Co. of Am.*, 910 F. Supp. 879, 888 (N.D.N.Y. 1996) (granting summary judgment where plaintiff had no evidence of discriminatory conduct by the two individuals who accepted and approved her supervisor's recommendation to terminate her employment).

Third, Berlamino treated Scott favorably over the years, including right up to the termination decision itself, when Berlamino asked Charlier and Ramirez whether she could place Scott on a PIP instead of terminating Scott's employment in August 2009.  (Def.'s 56.1, ¶¶ 88-91.)  Berlamino also protected Scott from termination over the last seven months of her employment, (*id.*, ¶¶ 80, 82), and gave Scott raises and bonuses over the years, (*id.*, ¶¶ 114-16).  All of that favorable treatment by Berlamino negates age discrimination.  *James*, 233 F.3d at 152-53 (affirming summary judgment, concluding "recent promotion of plaintiff with a 30 percent raise" showed no discrimination).

Fourth, Berlamino, who was age 50 at the time of Scott's termination, is also a member of the same protected class as Scott.  (Def.'s 56.1, ¶ 8.)  That further dooms Scott's age discrimination claims.  *Waters v. Gen. Bd. of Global Ministries*, No. 09-CV-7241 (NRB), 2011 U.S. Dist. LEXIS 20541, at *19 (S.D.N.Y. Feb. 25, 2011) (granting summary judgment to employer and noting that "where the plaintiff and the individual whose conduct is at issue are members of the same protected class, the inference that the conduct constitutes . . . discrimination is weakened"); *Adams v. Canon USA, Inc.*, No. 07-CV-3512 (DRH), 2009 U.S. Dist. LEXIS 86722, at *45-46 (E.D.N.Y. Sept. 22, 2009) ("The fact that the decisionmaker is a member of Plaintiff's protected class not only weakens any suggestion of discrimination but strongly suggest[s] that invidious discrimination is unlikely.") (quotations omitted).

Fifth, Scott cannot show that her replacement was "significantly younger."  Scott's replacement, Bill Carey ("Carey"), was almost age 52 at the time he became WPIX's News

Director.  (Def.'s 56.1, ¶ 112.)  Because Carey was not "significantly younger" than Scott (he

was only 8½ years younger), she cannot prove a *prima facie* case of age discrimination.

*McDermott v. N.Y. City Hous. Dev. Corp.*, No. 10-CIV-2029 (HB), 2011 U.S. Dist. LEXIS 4349,

at *14 (S.D.N.Y. Jan. 18, 2011) (granting summary judgment to employer; no evidence of age

discrimination where plaintiff was replaced by someone *ten years younger than her*); *Baguer v.*

*Spanish Broad. Sys.*, No. 04-CV-8393 (RJS), 2010 U.S. Dist. LEXIS 69212, at *14 (S.D.N.Y.

Sept. 20, 2007) (granting summary judgment dismissing plaintiff's age discrimination claim,

concluding that "because the difference between Plaintiff and his replacement is only eight years,

the Court finds that this difference, particularly when considered in light of the other evidence,

does not support an inference of discrimination"; court also emphasized that "most circuits

ha[ve] held that age differences of less than ten years are not significant enough to make out the

fourth part of the age discrimination *prima facie* case"); *Mattera v. JPMorgan Chase Corp.*, 740

F. Supp. 2d 561, 577-78 (S.D.N.Y. 2010) ("Indeed, that plaintiff was replaced by a younger

employee . . . does not suffice to prove that the adverse employment action here was motivated

by age discrimination.  [Plaintiff] cannot defeat summary judgment merely by showing that [s]he

was replaced by [a younger employee].  Typically, younger workers will replace older ones; this

is an unremarkable phenomenon that does not . . . prove discrimination.") (citations omitted).

Moreover, Charlier (and not Berlamino) selected Carey to replace Scott *and* Scott does not

believe that Charlier discriminated against her.  (Def.'s 56.1, ¶¶ 54, 112.)  These facts further

vitiate Scott's age discrimination claims.  *See Grady*, 130 F.3d at 553 (affirming summary

judgment where plaintiff had no proof of any age discrimination by person who made decision at

issue).

Sixth, in April 2009, Berlamino also terminated Tim Armstrong's employment with WPIX because of his unsatisfactory performance as the Executive Producer of the News at Ten, and he was age 43 at the time. (Def.'s 56.1, ¶¶ 76-78.) Berlamino's decision to terminate an employee who was substantially younger than Scott *by 17 years* further undercuts Scott's age discrimination claims. *Cobb v. Frontier Communs. of Rochester, Inc.*, No. 08-CIV-6030 (MAT), 2010 U.S. Dist. LEXIS 80465, at *15 (W.D.N.Y. Aug. 10, 2010) (granting summary judgment, emphasizing fact that younger employees were also terminated based on performance, thus undermining plaintiff's allegation that age was considered in decision-making process); *Hammer v. FedEx*, No. 07-CIV-1445 (BMC), 2008 U.S. Dist. LEXIS 41689, at *10-11 (E.D.N.Y. May 28, 2008) (granting summary judgment, stating: "plaintiff's argument that he was 'set up' for termination as a result of his age simply cannot reasonably be accepted" where defendants terminated far younger employees for the same act).

Seventh, Scott has failed to offer any evidence that she was treated less favorably than other similarly-situated, younger employees. *Subramanian v. Prudential Secs., Inc.*, No. 01-CV-6500 (SJF), 2003 U.S. Dist. LEXIS 23231, at *22 (E.D.N.Y. Nov. 20, 2003) (granting summary judgment, concluding that plaintiff did not show inference of discriminatory intent where he failed to establish that those allegedly treated preferably were similarly situated to him). Scott has not bothered to allege that other similarly-situated, younger individuals were treated more favorably – and, in light of the termination of Armstrong for poor performance at age 43, (Def.'s 56.1, ¶¶ 76-78), she cannot do so.

Finally, it is significant that – based on Scott's same allegations before this Court, including Berlamino's purported comments about other employees in the protected age group, (*compare* Complaint (Cerasia Decl., Ex. X), *with* EEOC Charge (Def.'s 56.1, ¶ 180 (Scott Dep.

Ex. 28)) – the EEOC concluded after its investigation that WPIX did not discriminate against Scott.  By letter dated January 7, 2011, the EEOC concluded that "[t]here is insufficient evidence to indicate that [WPIX] treated you differently due to your [age]."  (Def.'s 56.1, ¶ 181.)  The EEOC's determination is compelling evidence that WPIX did not discriminate against Scott.  *See, e.g., Plummer v. Western Int'l Hotels Co.*, 656 F.2d 502, 505 (9th Cir. 1981) ("An EEOC determination, prepared by professional investigators on behalf of an impartial agency, has been held to be a highly probative evaluation of an individual's discrimination complaint."); *Bawa v. Brookhaven Nat'l Lab.*, No. 95-CIV-2472 (LDW), slip op. at 15 (E.D.N.Y. Oct 15, 1997) (relying on State Division "no probable cause" determination in granting summary judgment dismissing discrimination claims) (copy attached to Cerasia Decl. at Ex. W), *aff'd*, 201 F.3d 430 (2d Cir. 1999); *Balletti v. Sun-Sentinel Co.*, 909 F. Supp. 1539, 1545 (S.D. Fla. 1995) (findings and conclusions by state agencies are admissible and appropriate in determining whether employee was discriminated against by employer); *Wade v. New York Tel. Co.*, 500 F. Supp. 1170, 1178 (S.D.N.Y. 1980) (relying upon EEOC's "no reasonable cause" finding the concluding that plaintiff failed to prove discriminatory discharge claim).

In the end, Scott's only purported "evidence" of age discrimination *toward her* is one innocuous comment allegedly made by Berlamino to her *in 2003 – six years prior* to her termination – that she was "walking like a grandmother" at a time when Scott was limping and about to undergo leg surgery.  (Def.'s 56.1, ¶ 130.)  Tellingly, Scott admits that, between 2000 and December 30, 2008, Berlamino did *not* make *any* decisions with regard to her employment on the basis of her age, (*id.*, ¶ 14), which shows that the alleged comment *in 2003* had no negative impact on Berlamino's treatment of Scott over the years.  Moreover, even assuming, *arguendo*, that Berlamino made that comment, it is wholly insufficient to prove Scott's claim

that she was terminated in 2009 because of her age, given that the alleged comment in 2003 was so remote in time to her termination and thus constitutes no more than a stray remark. *Alvarez v. Nicholson*, No. 03-CIV-4173 (RCC), 2005 U.S. Dist. LEXIS 45744, at *18 (S.D.N.Y. Aug. 3, 2005) ("[V]erbal comments may only constitute evidence of discrimination when they are 'proximate in time to the adverse employment action'") (citation omitted); *Campbell v. Alliance Nat'l Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) (stray remark remote in time from adverse employment action not sufficient to make out *prima facie* discrimination case); *see generally Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998) (stating that "stray comments" without "other indicia of discrimination" are insufficient to establish a *prima facie* case).

In any event, the alleged comment that Scott was "walking like a grandmother" is insufficient evidence of age discrimination to withstand summary judgment. Indeed, courts routinely have held that even facially ageist statements made directly to a plaintiff, which are much stronger than the alleged innocuous comment here, are insufficient to avoid summary judgment. *E.g.*, *Posner v. Sprint/United Mgmt. Co.*, 478 F. Supp. 2d 550, 559 (S.D.N.Y. 2007) (granting summary judgment despite remark that employee did not represent "future" of the company, because such comment did not evidence age discrimination); *LaMarch v. Tishman Speyer Properties, L.P.*, No. 03-CV-5246 (CBA), 2006 U.S. Dist. LEXIS 55006, at *20 (E.D.N.Y. Aug. 7, 2006) (no inference of age discrimination in statement that plaintiff might not "have the gas to continue"); *Pronin v. Raffi Custom Photo Lab, Inc.*, 383 F. Supp. 2d 628, 638 (S.D.N.Y. 2005) (granting summary judgment on age discrimination claim and holding comment that "maybe you are too old to be working here," made six to eight weeks before plaintiff's termination and unconnected to the decision-making process, amounts to the "virtual absence of evidence of discrimination"); *Pasha v. William M. Mercer Consulting, Inc.*, No. 00-CV-8362

(RWS), 2004 U.S. Dist. LEXIS 1226 , at *4 (S.D.N.Y. Feb. 2, 2004) (granting summary

judgment despite manager's comments to applicant regarding his own age and mentioning that

"we should be thinking of retiring at our age"), *aff'd*, 135 Fed. Appx. 489 (2d Cir. 2005); *Warren*

*v. Chem. Bank*, No. 96-CV-6075 (BSJ), 1999 U.S. Dist. LEXIS 19732 , at *9-10 (S.D.N.Y. Dec.

17, 1999) (no inference of age discrimination in manager's comment that "she didn't know

[plaintiff] was that old"); *Chastven v. CIGNA Corp.*, No. 97-CV-6013 (RPP), 1999 U.S. Dist.

LEXIS 17727, at *34-36 (S.D.N.Y. Nov. 10, 1999) (granting summary judgment and finding no

inference of discrimination from manager's memorandum indicating plan to involve "the

younger sales people" in developing a position in the market); *Ogiba v. Business Servs. Co.*, 20

F. Supp. 2d 379, 383 (N.D.N.Y. 1998) (granting summary judgment and finding no inference of

age discrimination where employer referred to plaintiff as an "old fart"); *Hatter v. Fulton*, No.

92-CV-6065 (WK), 1997 U.S. Dist. LEXIS 10429, at *15 (S.D.N.Y. July 21, 1997) (granting

employer summary judgment on age claim because supervisor's comment that company "needs

young people" was insufficient evidence of discrimination), *aff'd*, 165 F.3d 14 (2d Cir. 1998).  In

addition, Scott admits that there was no hostility between her and Berlamino, up until the date of

her termination, (Def.'s 56.1, ¶ 13), so the alleged 2003 comment clearly did not have a negative

impact on her employment.

For each of these reasons, Scott cannot establish a *prima facie* case of age discrimination,

and summary judgment in favor of WPIX is warranted.

### 2.   WPIX Had A Legitimate, Non-discriminatory Reason For Terminating Scott's Employment

Even if Scott could establish a *prima facie* case – which she cannot do – WPIX had a

legitimate, non-discriminatory reason for her termination:  her unsatisfactory job performance

resulting in declining ratings and net losses and an honest belief that she was not the right person

to lead the News Department, (*e.g.*, Defs.' 56.1, ¶¶ 84-91, 102-03). *Davis v. Avaya, Inc.*, 295

Fed. Appx. 380, 381 (2d Cir. 2008) (Summary Order affirming summary judgment; failure to

improve poor performance was non-discriminatory reason for termination); *Saulpaugh v.*

*Monroe Cmty. Hosp.*, 4 F.3d 134, 141 (2d Cir. 1993) (poor job performance is a legitimate, non-

discriminatory reason for termination); *Gambello v. Time Warner Communs., Inc.*, 186 F. Supp.

2d 209, 217 (E.D.N.Y. 2002) (granting summary judgment and concluding that management's

belief that plaintiff was "not the right person for the job" due to, among other things, poor

leadership, was a non-discriminatory reason supporting termination in age discrimination case).

**3.    Scott Has No Evidence That Her Age Was The "But For"**
**Cause Of, Or Even A Motivating Factor In, Her Termination**

As demonstrated above with respect to Scott's inability to prove a *prima facie* case of

age discrimination, there is no evidence even remotely suggesting that her age was the "but for"

cause of the decision to fire her, or even a motivating factor in the decision. *See supra* pages 10-

17. Therefore, summary judgment in favor of WPIX is warranted. *See Holowecki*, 382 Fed.

Appx. at 45 (Summary Order affirming summary judgment dismissing age discrimination

claims, stating: "at the final stage, plaintiffs must offer evidence that age discrimination was the

'but-for' cause of the challenged actions"); *Sullivan v. Brodsky*, 380 Fed. Appx. 21, 21-22 (2d

Cir. 2010) (Summary Order affirming grant of summary judgment on age discrimination claims,

stating: "Proceeding to the final step of the analysis, plaintiff must adduce sufficient evidence to

allow a rational fact finder to conclude that age was the 'but-for' cause of the challenged adverse

employment action and not just a contributing or motivating factor.") (citation omitted).

In the end, Scott attempts to carry her burden at the final stage by disagreeing with

WPIX's termination decision and alleging that, at various points over nine years, Berlamino

made age-based comments about *other* WPIX employees (but not Scott). But that is insufficient to withstand summary judgment.

### a.    Scott Cannot Second-Guess WPIX's Termination Decision

The record makes plain that Scott simply disagrees with the decision to fire her, as she thought she was doing a good job as the News Director. (Def.'s 56.1, ¶ 131.) But, Scott's disagreement with WPIX's decision to fire her does not, as a matter of law, prove pretext. That was WPIX's decision to make and, without a shred of evidence to cast doubt on Berlamino's and Charlier's good-faith conclusions that Scott's performance was unsatisfactory and that she was not the right person to lead the News Department going forward, or on Rameriz's agreement that termination was the right decision, the law makes clear that courts should not interfere with or second-guess valid termination decisions. "The court's role is to prevent unlawful [employment] practices, not to act as a superpersonnel department that second guesses employers' business judgments." *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) (quotations omitted). "Federal Courts are not in the business of adjudicating whether employment decisions are prudent or fair. Instead, [the Court's] sole concern is whether unlawful discriminatory animus motivates . . . a decision." *Id.*; *Baguer*, 2010 WL 2813632, at *6 ("[A] fact-finder need not, and indeed should not, evaluate whether a defendant's stated purpose is unwise or unreasonable."). Nor may Scott rely on any positive aspects of her past performance reviews and feedback to prove that her termination was pretextual. That is because "past positive performance is insufficient to raise a genuine issue of disputed fact with respect to pretext." *Mattera*, 740 F. Supp. 2d at 577-78; *Pergament v. FedEx*, No. 03-CV-01106, 2007 U.S. Dist. LEXIS 23732, at *12 (E.D.N.Y. Mar. 30, 2007) (concluding that employee's receipt of generally positive evaluations in the past did not raise a triable issue of fact regarding pretext).

**b.**     **The Alleged Stray Comments By Berlamino**
         **Do Not Save Scott's Claims From Dismissal**

This leaves Scott relying on the alleged age-based comments by Berlamino *toward other*

*WPIX employees* to avoid summary judgment. But, Scott cannot rely on those alleged comments

to withstand summary judgment for each of the following reasons:

First, the alleged comments, (*see* Def.'s 56.1, ¶¶ 134, 141, 146, 152, 160, 164, 178), are

stray remarks and unrelated to the decision to terminate Scott's employment, which was

ultimately made by Berlamino after being pressured by Charlier for several months to make that

decision, and thus are irrelevant to Scott's claims. *See supra* pages 16-17 (cases cited).

Second, the facts surrounding these other employees show that they were not victims of

age discrimination. Indeed, the facts show that Berlamino treated the employees in question

(Larry Hoff, Barry Cunningham, Marvin Scott, Sal Marchiano, Mary Murphy, Kaity Tong and

Vanessa Tyler) favorably over the years, including extending their employment contracts and

employment; that Berlamino did not make the decision to eliminate Janet Maslow's job; and/or

that WPIX had legitimate reasons for the employment decisions involving these individuals.

(Def.' 56.1, ¶¶ 136-38, 142, 147-49, 153-54, 156, 158-61, 166-68, 171, 173, 175-77.)

Consequently, the alleged comments are not even evidence of age discrimination toward any of

those employees and had no impact on their employment, and therefore cannot possibly be

construed as evidence of age discrimination toward Scott.

Third, a party opposing summary judgment must rely upon admissible evidence. *Gene*

*Codes Forensics, Inc. v. City of New York*, No. 10-CV-1641 (NRB), 2011 U.S. Dist. LEXIS

72130, at *20 (S.D.N.Y. June 24, 2011) ("[I]n determining the appropriateness of a grant of

summary judgment, [the court] may rely only on admissible evidence."). The alleged comments

by Berlamino, however, will not be admissible at any trial – and thus should be stricken –

because they are irrelevant, would require "mini-trials" to test the viability of any claim of age discrimination toward each employee in question and would be confusing to a jury and prejudicial to WPIX. *E.g.*, *Haskell v. Kaman Corp.*, 743 F.2d 113, 120-22 (2d Cir. 1984) (concluding that the district court erred in permitting several witnesses to recount their contention that they had been terminated because of their age, stating "even the strongest jury instructions could not have dulled the impact of a parade of witnesses, each recounting his contention that defendant laid him off because of his age"); *Moorhouse v. Boeing Co.*, 501 F. Supp. 390, 393 n.4 (E.D. Pa.), *aff'd*, 639 F.2d 774 (3d Cir. 1980); Fed. R. Evid. 403. The only issue in a disparate treatment case is how *Scott* "was treated, and why," *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 848 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018 (1994), and not how others may have been treated in Scott's eyes, and there is simply no evidence that her age was any factor in, let alone the "but for" cause of, her termination.

In addition, even if the Court concludes that the alleged comments are "some evidence" of discrimination toward Scott and would be admissible – which it should not do – Scott cannot rest on "some evidence" to survive summary judgment on her claims because the undisputed and well-supported record shows that her termination was performance-based and driven by Charlier with approval by Ramirez, neither of whom she accuses of age discrimination. (*E.g.,* Def.'s 56.1, ¶¶ 84-91, 102-04.) She also has no competent proof of any age discrimination by Berlamino toward her. (*Id.*, ¶¶ 13-15.) *E.g.*, *Woroski v. Nashua Corp.*, 31 F.3d 105, 109-10 (2d Cir. 1994). In *Woroski*, the evidence of alleged age discrimination was clearly more compelling than any purported "evidence" of discrimination here. There, the plaintiffs alleged age discrimination in connection with their layoffs. *Id.* at 108. The district court granted summary judgment, which the Second Circuit affirmed. *Id.* at 110. In opposing summary judgment, the

plaintiffs presented evidence that the plant manager and decision-maker had been critical of older workers at the plant and, "on many occasions," stated that "the salary work force[] was older, had been around too long, made too much money and enjoyed too many benefits and that what this company needed was new younger people, perhaps people out of college . . . that were younger, more aggressive, hungrier, that would have come and not had six weeks vacation . . . and in fact could be hired for, you know, half or 70% of what these people  . . . enjoy."  *Id.* at 108 (quotations omitted).  Despite recognizing that "plaintiff did advance some evidence of age bias" relating to the decision-maker's statements, the Second Circuit affirmed summary judgment in favor of the defendant, stating in words equally dispositive here that "*some* evidence is not sufficient to withstand a properly supported motion for summary judgment." *Id.* at 109-10 (emphasis in original).  *Worowski* is dispositive of Scott's purported "evidence" of alleged age-based comments by Berlamino in this case, and makes plain that she cannot rely on those alleged comments to withstand WPIX's properly supported summary judgment motion.

## IV.    CONCLUSION

In short, no reasonable jury could conclude, absent speculation, that Scott's age was the "but-for" cause of her termination, or even a motivating factor in that decision.  Consequently, on the basis the foregoing undisputed facts, arguments and authorities, the Court should grant

22

summary judgment in favor of WPIX and grant to WPIX such other and further relief as the

Court may deem just and proper.

Dated: New York, New York
       August 12, 2011

                                        Respectfully submitted,

                                        SEYFARTH SHAW LLP


                                        By  s/ Edward Cerasia II
                                            Edward Cerasia II
                                            Anjanette Cabrera
                                            Jeremi L. Chylinski
                                        620 Eighth Avenue, 32nd Floor
                                        New York, New York 10018-1405
                                        (212) 218-5500

                                        Attorneys for Defendant
                                         WPIX, Inc.