UNITED STATES DISTRICT OF NEW YORK
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
:
KAREN SCOTT, :
:
Plaintiff, :
:
-against- : 10-CIV-4622 (WHP)
:
WPIX, INC., :
:
Defendant. :
:
------------------------------------x

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN
## FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Dated: New York, New York
       October 11, 2011

Edward Cerasia II
Anjanette Cabrera
Jeremi L. Chylinski
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500

Attorneys for Defendant
*WPIX, Inc.*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

I. PRELIMINARY STATEMENT ........................................................................................... 1

II. ARGUMENT ......................................................................................................................... 1

    A.  SCOTT CANNOT MANUFACTURE FACTUAL DISPUTES
        TO SUPPORT HER DISCRIMINATORY TERMINATION CLAIMS ........................... 1

    B.  SCOTT CANNOT AVOID SUMMARY JUDGMENT
        BY ATTACKING WPIX'S BUSINESS JUDGMENT ...................................................... 8

    C.  SCOTT'S EVIDENCE OF PRETEXT IS
        IRRELEVANT AND WEAK, AT BEST ........................................................................... 8

III. CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................................... 3

*BellSouth Telecomms., Inc. v. W.R. Grace & Co.*,
    77 F.3d 603 (2d Cir. 1996) ........................................................................................ 2

*Carey v. Reed Elsevier, Inc.*,
    96-CV-8995 (HB), 1998 U.S. Dist. LEXIS 6834 (S.D.N.Y. May 11, 1998) ............ 8

*County of Suffolk v. LILCO*,
    907 F.2d 1295 (2d Cir. 1990) .................................................................................... 2

*Duprey v. Prudential Ins. Co. of Am.*,
    910 F. Supp. 879 (N.D.N.Y. 1996) ............................................................................ 6

*Edwards v. Wallace Cmty. Coll.*,
    49 F.3d 1517 (11th Cir. 1995) .................................................................................. 6

*Feinerman v. T-Mobile USA*,
    08-CV-3517 (SAS), 2010 U.S. Dist. LEXIS 7007 (S.D.N.Y. Jan. 28, 2010) .......... 10

*Goenaga v. March of Dimes Birth Defects Found.*,
    51 F.3d 14 (2d Cir. 1995) ..................................................................................... 1, 4

*Horn v. New York Times*,
    760 N.Y.S.2d 378 (2003) ........................................................................................... 3

*Kerman-Mastour v. Fin. Indus. Regulatory Auth., Inc.*,
    10-CV-1633 (RJH), 2011 U.S. Dist. LEXIS 113074 .............................................. 10

*Knight v. N.Y. City Hous. Auth.*,
    03 Civ. 2746, 2007 WL 313435 (S.D.N.Y. Feb. 2, 2007) ......................................... 3

*McCoy v. WGN Continental Broadcasting Co.*,
    957 F.2d 368 (7th Cir. 1992) .................................................................................... 8

*McPherson v. City of N.Y.*,
    09-CV-4682 (BSJ), 2011 U.S. Dist. LEXIS 108804 (S.D.N.Y. Sept. 23, 2011) ....... 2

*Perma Research & Dev. Co. v. Singer Co.*,
    410 F.2d 572 (2d Cir. 1969) ...................................................................................... 2

*SCR Joint Venture L.P. v. Warshawsky*,
   559 F.3d 133 (2d Cir. 2009) .................................................................................................. 3

*Woroski v. Nashua Corp.*,
   31 F.3d 105 (2d Cir. 1994) .................................................................................................... 9

**RULES**

Fed. R. Civ. P. 56(c) .................................................................................................................... 3

Local Civil Rule 56.1(b)–(d) ....................................................................................................... 3

I. **PRELIMINARY STATEMENT**

WPIX respectfully submits this reply memorandum of law in further support of its summary judgment motion.[1] Scott has failed to present any admissible facts or legal arguments showing that her age was the "but for" cause of her termination (or even a motivating cause). Instead, Scott's opposition papers show that she seeks to create issues of fact – where none exist – by mischaracterizing or distorting the record, contradicting her deposition testimony, and ignoring facts demonstrating WPIX's good-faith belief that she was not the right person to lead the News Department going forward. In the end, Scott admits that she has no admissible evidence of any age discrimination *toward her* by Berlamino, Charlier or Ramirez and merely disagrees with WPIX's business judgment to terminate her employment, claiming that "her performance did not justify termination." (Pl.'s 56.1, ¶ 131.) Under these circumstances, she has given the Court no choice but to grant summary judgment and dismiss this case.

II. **ARGUMENT**

A. **SCOTT CANNOT MANUFACTURE FACTUAL DISPUTES TO SUPPORT HER DISCRIMINATORY TERMINATION CLAIMS**

Scott takes great liberties with the record. Her response to WPIX's Rule 56.1 Statement is riddled with distortions or mischaracterizations of the record, contradictions to deposition testimony, disagreement with management decisions, arguments based solely on speculation, and even reliance on immaterial facts – all of which are insufficient to save her claims from dismissal. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (plaintiff cannot avoid summary judgment by ignoring or misstating record or relying on

---

[1] The abbreviated and capitalized terms used in this reply memorandum are defined in "Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment" ("Def.'s Mem."). "Plaintiff's Response to Defendant's Rule 56.1 Statement" will be cited herein as "Pl.'s 56.1" and her "Memorandum of Law in Opposition" to the motion will be cited as "Pl.'s Mem."

"unsupported factual assertions . . . conjecture or surmise or upon the mere allegations or denial of the adverse party's pleadings"); *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (it is insufficient for non-moving party "merely to assert a conclusion without supplying supporting arguments or facts" and finding that "[s]uch conclusory statements are insufficient to raise a triable issue of material fact"); *County of Suffolk v. LILCO*, 907 F.2d 1295, 1318 (2d Cir. 1990) ("[I]n determining what may reasonably be inferred, [non-movant] is not entitled to . . . inferences at war with undisputed facts."); *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) (a party cannot contradict prior testimony to avoid summary judgment); *McPherson v. City of N.Y.*, 09-CV-4682 (BSJ), 2011 U.S. Dist. LEXIS 108804, at *14 (S.D.N.Y. Sept. 23, 2011) (granting summary judgment and noting that "a party cannot manufacture a factual dispute by themselves creating conflicts in the record").

Indeed, 179 of Scott's 181 responses to WPIX's Rule 56.1 Statement fall into one of the following four categories: (i) admits, including simply referring to the exhibit cited by WPIX and admissions followed by "upon information and belief" and/or "denies knowledge or information";[2] (ii) denies or admits, followed by the same assertion set forth in WPIX's 56.1, but incorporating different language and/or additional support that does not refute the assertion;[3] (iii) denial, followed by either no citation to the record in violation of Local Civil Rule 56.1 or opposing argument;[4] and (iv) denial, followed by a citation that either does not support the denial or directly contradicts deposition testimony, including Scott's own testimony.[5]

---

[2]   Pl.'s 56.1, ¶¶ 1-3, 7-10, 12, 14-21, 23-28, 30-38, 40-41, 43-51, 53-63, 65-69, 71-76, 78-80, 82-93, 97, 98-102, 104-07, 109-21, 123, 125-35, 137-47, 149-54, 156-71, 173-81.

[3]   Pl.'s 56.1, ¶¶ 5-6, 11, 22, 39, 77, 94-95, 103, 108, 124, 148.

[4]   Pl.'s 56.1, ¶¶ 81, 64, 99.

[5]   Pl.'s 56.1, ¶¶ 4, 13, 29, 42, 52, 96, 122, 136, 155, 172.

Local Civil Rule 56.1 requires that each numbered paragraph in WPIX's 56.1 be deemed admitted unless "specifically controverted by a correspondingly numbered paragraph" and *"followed by citation to evidence which would be admissible"* in accordance with Fed. R. Civ. P. 56(c). L.R. 56.1(b)-(d) (emphasis added). At the very outset then, Scott's failure to properly controvert those facts identified in categories (iii) and (iv) above by citing to specific evidence in the record compels that such facts be deemed admitted. *Knight v. N.Y. City Hous. Auth.*, 03 Civ. 2746, 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007). Accordingly, the only facts that are even arguably refuted in accordance with Local Rule 56.1(d) are those set forth in paragraphs 64 and 70 of WPIX's 56.1, neither of which are dispositive. Indeed, those "disputed" facts lay with Scott's denial that Charlier told her "there was more pressure from Tribune to improve WPIX's News product and the ratings" or that "more changes would be coming," (Def's 56.1, ¶ 70), and that the meeting Berlamino documented in a note erroneously dated as November 2, 2008 never occurred, (Def's 56.1, ¶ 64). Neither are dispositive, material facts because they do not affect the outcome of this case. *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) ("A fact is material if it might affect the outcome of the suit under the governing law."). Thus, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Scott's other responses are similarly deficient. For example, in sharp contrast to Scott's disingenuous allegations of an "unblemished performance record," (Pl.'s Mem. at 14, 18), the factual record is replete with e-mails and discussions about her need to improve her performance and the declining ratings for the News, and grow revenue. (*E.g.*, Def.'s' 56.1, ¶¶ 36-46.)

Along the same lines, Scott's manufactured "surprise" regarding her termination, (Pl.'s Mem. at 13-14), is of no moment. Scott was an at-will employee terminable at any time, with or without notice. *Horn v. New York Times*, 760 N.Y.S.2d 378, 380 (2003). Moreover, nothing in

the ADEA, NYSHRL or NYCHRL mandates formal progressive discipline before an employee is terminated, and Scott does not cite any contrary authority. Thus, her feigned ignorance concerning the reasons for her termination (or prior notice of her deficiencies) not only ignores the numerous emails she admits she received criticizing her performance, but also is a red herring meant to muddy the record and, in any event, is irrelevant to her claims.

Nor are there "inconsistencies" as to *why* she was terminated. (Pl.'s Mem. at 15-18.) WPIX's position statement to the EEOC specifically identified Scott's performance and the News' declining ratings as the primary reasons for her termination. (Pl.'s Ex. 71.) WPIX maintains the same position before this Court: Scott's unsatisfactory job performance resulted in declining ratings and net losses for the News and created the honest belief that she was not the right person to lead the News Department. (Def.'s Mem. at 1, 10.) That WPIX's position statement identified *the reasons for* Scott's termination, but not *the process* leading to that decision, including Charlier and Ramirez's role in the process, does not create a factual "inconsistency." Indeed, Scott knew about Ramirez's involvement, given that Ramirez was at the termination meeting. Thus, the fact that Ramirez does not appear in the position statement does not in any way prove pretext. In addition, while Scott takes issue that Charlier was not mentioned in the position statement, he also did not make the final decision to fire Scott. The undisputed record shows that Charlier did not believe Scott was the right person to lead the News Department from his first visit to WPIX and that he eventually convinced Berlamino, the ultimate decision-maker, of that fact. Scott has nothing to refute Charlier's sworn testimony of his involvement in the decision-making process, and challenging his credibility on summary judgment does not permit her to survive this motion. *See Goenaga*, 51 F.3d at 18 ("[P]arty opposing summary judgment may not rely . . . on contentions that the affidavits supporting the

motion are not credible."). Scott's lip service on this non-issue is yet another last-ditched attempt to hide the undisputed facts warranting dismissal.

Scott's allegation that WPIX's nightly news ratings were "doing better" in 2009 is a complete misreading of the report she cites for that proposition. Indeed, the report, (*see* Pl.'s Ex. 85, at 15) – a Tribune-prepared study of the 10:00 p.m. news – is the culmination of interviews of 500 nightly news watchers, some of whom apparently believed that WPIX's 10:00 p.m. News was "doing better" than the year before. The report, however, is not in any way related to WPIX News' *Nielsen ratings* – which Scott admits drive revenue and had declined between 20% and 40% over the last two years. (Def.'s 56.1, ¶ 87; Pl.'s 56.1, ¶ 87.)

Scott also impermissibly spins Ramirez's testimony and alleged "concern" regarding Scott's termination. (Pl.'s 56.1, ¶ 105; Pl.'s Mem. at 26.) Ramirez testified that, consistent with her practice as Vice President of Human Resources, she would perform an adverse impact analysis relating to non-renewal of contracts for on-air talent, and that there is a "concern" when, like at WPIX, employees have "longevity" and therefore are comprised of a large percentage of individuals over age 40. (Def.'s 56.1, ¶ 105; Ramirez Dep. at 68-69, 74.) But, at no time did Ramirez testify that she was "concerned" *about Scott's termination*, or that Scott was being terminated *because of her age*. In fact, Ramirez supported the termination decision. (Def.'s 56.1, ¶ 103.) Thus, Ramirez's alleged "concern" was one that is (and should be) expressed by any savvy human resources professional when a company terminates employees in a protected class. It is not evidence of age discrimination toward Scott.

Scott's allegation that Berlamino was "papering the record" with her August 17, 2009 memo to Ramirez, (Pl.'s Mem. at 14; Pl.'s 56.1, ¶ 102), is another desperate attempt to distort the record in the hope of creating a disputed fact. Yet again, Scott fails. Ramirez clearly

5

testified that she did *not* look at Scott's personnel file in connection with the termination, but rather asked Berlamino if there was any documentation showing Scott's performance issues. (Ramirez Dep. at 35) (attached to Cerasia Decl. as Ex. G). When Berlamino told Ramirez that she had in fact documented issues over the years, Ramirez specifically asked Berlamino to *summarize* that documentation for her to review. (*Id.*) Ramirez did not testify that there was a "lack of any performance-related issues in Ms. Scott's file," as Scott now claims.

Scott's contention that the hiring of Carey, who was not significantly younger than Scott, (Def.'s 56.1, ¶ 112), was a "sham" because he was hired after Scott complained about age discrimination, (Pl.'s Mem. at 23), is pure speculation and ignores the fact that Charlier made that hiring decision, (Def.'s 56.1, ¶ 112). Absent admissible evidence to support her conjecture, the Court should reject it. *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521 (11th Cir. 1995) (concluding that plaintiff failed to prove a *prima facie* case of race discrimination because she had no proof that her replacement was hired because she filed an EEOC charge); *Duprey v. Prudential Ins. Co. of Am.*, 910 F. Supp. 879, 887 (N.D.N.Y. 1996) (same).

Finally, Scott's repeated contention that Berlamino fabricated a meeting in November 2008 – *some 9 months before the termination* – ignores the record and is irrelevant in any event. Berlamino's mistaken dating of a document as "November 2," 2008, instead of "December 2," 2008, (Def.'s 56.1, ¶ 64), is hardly relevant or material. Moreover, the significance of the meeting is undermined by the fact that it did not trigger Scott's termination *nine months later*, and the mass of emails and other evidence supporting the decision to terminate Scott's employment as of August 26, 2009 renders the meeting *and* the date on which it occurred irrelevant to the resolution of this case.

In the end, when stripped of Scott's misstatements, speculation, and manufactured contradictions, and considered with the many admissions in her Rule 56.1 Statement, the record before this Court contains the following undisputed and dispositive facts:

- As New Director, Scott was responsible for the overall supervision of the News Department, including making sure that the News Department turned a profit, and her performance was judged on the Nielsen ratings for the News. (Def.'s 56.1, ¶¶ 1, 25.)

- Scott does not allege that Berlamino made any decisions with regard to her employment on the basis of her age between 2000 and December 30, 2008, and they had a good working relationship up until the date of her termination. (Def.'s 56.1, ¶¶ 13-15.)

- The News Department's profitability is measured by Nielsen ratings, and the amount an advertiser will pay for commercial time is directly related to the station's Nielsen ratings. (Def.'s 56.1, ¶ 17.)

- Charlier became Senior Vice President of News and Operations at Tribune in early-2008, and was responsible for working with WPIX to increase ratings, improve overall efficiency and grow revenue for the News Department. (Def.'s 56.1, ¶ 31.)

- Overall, Berlamino believed that Scott was a good worker, but did not handle issues with her staff appropriately and lacked the ability to increase the News' ratings so that the News could turn a profit. (Def.'s 56.1, ¶ 36.)

- Berlamino put Scott on notice with regard to her concerns about Scott's performance deficiencies and declining Nielsen ratings, and the impact they had WPIX's profits as early as 2004, and through the dozens of emails she sent to Scott in 2009 alone. (Def.'s 56.1, ¶¶ 36-40, 42-46, 50, 75, 79, 83.)

- As early as his first visit to WPIX in the Fall of 2008, Charlier doubted whether Scott was the right person for the job. (Def.'s 56.1, ¶ 53.)

- Charlier and Ramirez did not do anything toward Scott that was unfair or discriminatory because of her age. (Def.'s 56.1, ¶¶ 54, 104.)

- Charlier expressed to Berlamino that Scott was not the person who could change the News and make it profitable, and Berlamino eventually agreed. (Def.'s 56.1, ¶¶ 53, 57, 59, 69, 81, 84-86.)

- In the Spring and Summer of 2009, Berlamino continued to send e-mails to Scott expressing the gravity of the decline in the Nielsen ratings, the extensive loss of revenue, and the need for innovative ideas to turn things around. (Def.'s 56.1, ¶¶ 75, 79, 83.)

- By June 11, 2009, Charlier became more aggressive about expressing his concerns that Scott was not the right person to turn things around. (Def.'s 56.1, ¶ 81.)

7

- Over the last two years of Scott's employment, the Nielsen ratings for WPIX's news programs (both morning and evening) had decreased anywhere from 20 to 40 percent, resulting in a loss for the News of more than $10 million over the course of two years – over $3 million in 2008 and $7 million in 2009. (Def.'s 56.1, ¶ 87.)

- In light of the decreasing ratings and a negative cash flow for two years, Berlamino decided that she could no longer make excuses for Scott, and told Charlier that she was ready to make a change that was in line with senior management's vision. (Def.'s 56.1, ¶ 86.)

On this record, summary judgment in favor of WPIX is warranted.

**B.   SCOTT CANNOT AVOID SUMMARY JUDGMENT BY ATTACKING WPIX'S BUSINESS JUDGMENT**

The crux of Scott's opposition lies in her obvious disagreement with Charlier and Berlamino's honest assessment that she was not the right person to lead the News Department and the decision to terminate her employment. (*E.g.*, Pl.'s 56.1, ¶ 131 ("her performance did not justify termination").) Her disagreement, however, is irrelevant and does not help her survive summary judgment. (Def.'s Mem. at 19.) "Even if the performance concern was a complete mistake, even if [Scott] was the best possible person for the job, so long as [Charlier and Berlamino] honestly believed [she] was not, [their] business judgment will not be second-guessed by federal courts applying the ADEA." *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir. 1992). Simply put, Scott has no admissible evidence that her age was the "but for" cause of her termination, or even a motivating cause. (Def.'s Mem. at 10-19.)

**C.   SCOTT'S EVIDENCE OF PRETEXT IS IRRELEVANT AND WEAK, AT BEST**

Scott's argument that "Berlamino's actions with respect to [her] were consistent with [Berlamino's] treatment and behavior towards other older WPIX employees," (Pl.'s Mem. at 8), is irrelevant, misstates the record and is weak evidence, at best. The alleged comments, all of which were discussed in WPIX's opening papers, are not evidence of age discrimination toward any of the employees and, most significantly, are not evidence of discrimination *toward Scott*. See Def.'s Mem. at 20-22; *Carey v. Reed Elsevier, Inc.*, 96-CV-8995 (HB), 1998 U.S. Dist.

8

LEXIS 6834, at *11 (S.D.N.Y. May 11, 1998) (granting summary judgment dismissing age discrimination case in spite of statement that "the problem with Plant Engineering is that it had too many older, overpaid salesmen and that they had to put in a new structure that would consist of 'seniors and juniors'"). And, in any event, these alleged comments are weak evidence, at best, that do not permit Scott to withstand summary judgment. *Woroski v. Nashua Corp.*, 31 F.3d 105, 109-10 (2d Cir. 1994) ("some evidence" is not enough to avoid summary judgment).

Likewise, Scott's allegation that "Berlamino also noted her age-based concerns and actions in emails," (Pl.'s Mem. at 8), is yet another misstatement. A review of the emails Scott cites to support this allegation make clear that Berlamino was advocating for the retention of individuals over age 40 and cautioning about possible litigation, but not that such individuals should be terminated because of their age. *See Woroski*, 31 F.3d at 109-10 n.2 ("The ADEA does not prohibit an employer from acting out of concern for excessive costs, even if they arise from age-related facts," including potential litigation). Along the same lines, Scott's contention that Berlamino discriminated against Tong because of age, (*see* Pl.'s Mem. at 26 and Pl.'s Ex. 76), conveniently ignores that Berlamino advocated *for and did save Kaity Tong's job in June 2009*, in the very same email that she cites as evidence of discrimination. (Def.'s 56.1, ¶¶ 166-69.) That favorable treatment toward Tong, who is older than Scott, refutes any evidence of age discrimination toward Tong or Scott.

Most significantly, Scott does not allege that Berlamino made any age-based comments *to or about her* and, in the end, does not have a shred of admissible evidence that her age was the "but for" cause (or any motivating cause) of the decision to terminate her employment. The absence of such evidence disposes of Scott's age discrimination claims. Indeed, recent decisions in this District show that even when – unlike here – a plaintiff puts forth some evidence of

9

alleged discriminatory comments *toward the plaintiff by a decision-maker*, courts still do not hesitate to grant summary judgment. *E.g., Kerman-Mastour v. Fin. Indus. Regulatory Auth., Inc.*, 10-CV-1633 (RJH), 2011 U.S. Dist. LEXIS 113074, at *35-41 (S.D.N.Y. Sept. 30, 2011) (granting summary judgment where plaintiff alleged that her direct supervisor made gender-based and religious-based comments); *Feinerman v. T-Mobile USA*, 08-CV-3517 (SAS), 2010 U.S. Dist. LEXIS 7007, at *48 (S.D.N.Y. Jan. 28, 2010) (granting summary judgment where plaintiff alleged that her supervisor made gender-based comments); Def.'s Mem. at 16-17.

### III. CONCLUSION

For each of the foregoing reasons, as well as those set forth in WPIX's moving papers, the Court should grant summary judgment in favor of WPIX.

Dated: New York, New York
       October 11, 2011

       Respectfully submitted,

       SEYFARTH SHAW LLP

       By *[signature: Edward Cerasia II]*
       Edward Cerasia II
       Anjanette Cabrera
       Jeremi L. Chylinski
       620 Eighth Avenue, 32nd Floor
       New York, New York 10018-1405
       (212) 218-5500

       Attorneys for Defendant
       WPIX, Inc.