SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/21/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KAREN SCOTT,

                     Plaintiff,

       -against-

WPIX, INC.,

                     Defendant.
------------------------------------------------------------X

10 Civ. 4622 (WHP)

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

        Plaintiff Karen Scott ("Scott") brings age discrimination claims against her former employer, Defendant WPIX, Inc. ("WPIX"), under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 634 et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et. seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq. WPIX moves for summary judgment dismissing the action. For the following reasons, WPIX's motion for summary judgment is denied.

## BACKGROUND

        Scott began working for WPIX as an Executive Producer in 1993. (Defendant's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1, dated Aug. 12, 2011 ("Defs. 56.1 Stmt.") ¶ 1.) In 1996, when Scott was 47 years old, WPIX promoted her to News Director. (Defs. 56.1 Stmt. ¶ 1.) She held this position until her termination in August 2009. (Defs. 56.1 Stmt. ¶¶ 2, 7.) As News Director, Scott was responsible for the overall operation of

the News Department, including Nielsen ratings ("ratings") and profitability. (Defs. 56.1 Stmt. ¶ 4.)

Between 2000 and her termination, Scott reported to Betty Ellen Berlamino ("Berlamino"), the General Manager of WPIX, who was 50 years old at the time of Scott's termination. (Defs. 56.1 Stmt. ¶ 7.) During her employment, Scott did not believe Berlamino harbored any animosity towards her. (Defs. 56.1 Stmt. ¶ 13.) Indeed, Berlamino consistently gave Scott positive performance reviews and annual raises. (Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1, dated Sept. 23, 2011 ("Pls. 56.1 Stmt.") ¶¶ 47, 114-15.) However, Berlamino periodically commented to Scott that several anchors and reporters over 40 years of age were "too old." (Pls. 56.1 Stmt. ¶¶ 151-52, 159, 160-61, 163, 167.) Subsequently, Berlamino demoted those individuals or refused to renew their contracts. (Pls. 56.1 Stmt. ¶¶ 151-52, 159, 160-61, 163, 167.)

Under Scott's leadership, the News Department won many accolades, including New York Emmy Awards and the Edward R. Murrow Award. (Pls. 56.1 Stmt. ¶ 24.) Yet, between 2008 and 2009, WPIX's news programs' ratings dropped substantially, which resulted in the loss of approximately $10 million in advertising revenue. (Defs. 56.1 Stmt. ¶ 87.) Beginning in late 2008, Berlamino repeatedly warned Scott that she had to improve WPIX's ratings. (Defs. 56.1 Stmt. ¶¶ 51; 62; 75; 79; 83.) In December 2008, WPIX filed for bankruptcy protection, which compounded the pressure to improve ratings and generate advertising revenue. (Defs. 56.1 Stmt. ¶ 30.) Throughout late 2008 and early 2009, ratings fluctuated greatly, and in some weeks Berlamino and others praised Scott when WPIX's ratings improved. (Pls. 56.1 Stmt. ¶ 22.)

In July 2009, Berlamino decided to terminate Scott, purportedly for Scott's failure to improve ratings. (Defs. 56.1 Stmt. ¶ 84-86.) At that time, WPIX's Human Resources representatives instructed Berlamino to prepare a document summarizing the basis for termination because there was no documentation in Scott's file to justify it. (Pls. 56.1 Stmt. ¶ 96.) Berlamino complied, and on August 26, 2009, she terminated Scott and replaced her with Bill Carey ("Carey"), who was eight years younger than Scott. (Defs. 56.1 Stmt. ¶¶ 104; 112).

## DISCUSSION

I.  Legal Standard

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Once the moving party has made an initial showing that there is no genuine dispute of material fact, the non-moving party cannot rely on the "mere existence of a scintilla of evidence" to defeat summary judgment but must set forth "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original); Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (citation omitted). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir.

2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Matsushita, 475 U.S. at 586-87). The Court resolves all factual ambiguities and draws all inferences in favor of the non-moving party. See Liberty Lobby, 477 U.S. at 255; Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005).

II. Framework

Courts utilize the three-step burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to evaluate ADEA, NYSHRL, and NYCHRL claims. See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010); see also Cooper v. Morganthau, No. 99 Civ. 11946 (WHP), 2001 WL 868003, at *9 (S.D.N.Y. July 31, 2001). First, plaintiff bears the burden of establishing a prima facie case of age discrimination. See Gorzynski, 596 F.3d at 106. Second, if plaintiff succeeds, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for its action." Gorzynski, 596 F.3d at 106 (internal quotation marks omitted). Finally, if the employer articulates a legitimate, nondiscriminatory reason for its actions, "the burden is on the plaintiff to show that the proffered nondiscriminatory reason was merely a pretext for discrimination." Spence v. Marlyand Cas. Co., 995 F.2d 1147, 1155 (2d Cir. 1993).

III. Prima Facie Case of Discrimination

To establish a prima facie case of age discrimination, a plaintiff must show that she was "(1) within the protected age group; (2) qualified for her position; (3) subject to an adverse employment decision, and that (4) such decision occurred under circumstances giving rise to an inference of unlawful discrimination." Hird-Moorhouse v. Belgian Mission to United Nations, No. 03 Civ. 9688 (RWS), 2010 WL 3910742, at *4 (S.D.N.Y. Oct. 5, 2010). The

4

burden at this stage is de minimis. See Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001).

The parties dispute only the fourth element—whether the circumstances surrounding Scott's termination give rise to an inference of unlawful discrimination. "It is well-settled that an inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to: the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; . . . or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." Liebovitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009) (internal quotation marks omitted).

Although the fact that Berlamino herself is a member of Scott's protected class weakens Scott's claim, Scott nonetheless offers adequate evidence to survive summary judgment on this issue. See Waters v. Gen. Bd. of Global Ministries, 769 F. Supp. 2d 545, 554 (S.D.N.Y. 2011). First, the eight-year age difference between Scott and her replacement, Carey, is "significant enough to support an inference in [Scott's] favor." D'Cunha v. Genovese/Eckerd Corp., 479 F.3d 193, 195 (2d Cir. 2007). Moreover, Berlamino repeatedly made derogatory comments about other employees in Scott's age group and later took adverse employment action against them, further supporting an inference of unlawful discrimination. See Liebovitz, 584 F.3d at 502.

IV.   Nondiscriminatory Reason for Termination

There also exists a genuine factual dispute regarding whether WPIX terminated Scott for her inability to improve ratings because WPIX's ratings fluctuated widely in the months

5

leading to Scott's termination. While Berlamino warned Scott that she must improve poor ratings, she and others also praised Scott when ratings improved. Additionally, Scott's employment file was devoid of any record of performance problems, further suggesting that a reasonable juror could find in Scott's favor on this issue. Cf. Sklar v. N.Y. Life Ins., 00 Civ. 2254 (WHP), 2001 WL 984724, at *7 (S.D.N.Y. Aug. 27, 2001) (finding nondiscriminatory reason for termination where employer's attempts to address plaintiff's performance problems were well-documented).

V. Pretext

Finally, even assuming that WPIX offered a legitimate, nondiscriminatory reason for terminating her, Scott offers sufficient evidence to establish a disputed issue of material fact about whether WPIX's reason was pretextual. See Spence, 995 F.2d at 1155. Under the ADEA, Scott "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action and not just a contributing or motivating factor." See Gorzynski, 596 F.3d at 106 (citing Gross v. FBL Fin. Servs. Inc., 129 S. Ct. 2343, 2352 (2009)) (internal quotation marks omitted). Under the NYSHRL and the NYCHRL, Scott need only show that her age was a "motivating factor" for her termination. Hird-Moorhouse, 2010 WL 3910742, at *6 n.1; see also Weiss v. J.P. Morgan Chase & Co., No. 06 Civ. 4402 (DLC), 2010 WL 11428, at *3-4 (S.D.N.Y. Jan. 13, 2010).

Scott offers sufficient evidence to establish that there is a genuine dispute of material fact regarding her ADEA claim because the lack of any documentation of performance-related issues in her employee file suggests that WPIX's reasons for terminating Scott were pretextual. Further, WPIX's fluctuating ratings also undermine WPIX's claim that it terminated Scott based on falling ratings. Moreover, Berlamino's comments that certain anchors and

reporters were "too old" for their jobs and her later adverse employment actions against those same individuals establishes that a genuine dispute of material fact exists. Cf. DiGirolamo v. Metlife Grp, Inc., No. 10 Civ. 1537 (RMB), 2011 WL 2421292, at *11 (S.D.N.Y. June 6, 2011) (evidence that employer made derogatory comments about others not enough to survive summary judgment when subjects of ageist comments were never removed from their positions). Because genuine disputes of fact preclude a grant of summary judgment dismissing Scott's ADEA claim, such factual disputes also preclude summary judgment under the more lenient "motivating factor" standard of the NYSHRL and NYCHRL.

## CONCLUSION

For the foregoing reasons, Defendant WPIX's motion for summary judgment is denied.

Dated:   December 21, 2011
         New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Copies mailed to*:

Kenneth Jason Rubinstein
Haynes and Boone, LLP (NY)
30 Rockefeller Plaza
26th Floor
New York, NY 10112
*Counsel for Plaintiff*

Edward Cerasia , II
Seyfarth Shaw L.L.P.
620 Eighth Avenue
New York, NY 10018-1405
*Counsel for Defendant*