UNITED STATES DISTRICT OF NEW YORK
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :

KAREN SCOTT,                           :

                   Plaintiff,       :

                           :

          -against-         :     10-CIV-4622 (WHP)

                           :

WPIX, INC.,                        :

                           :

                 Defendant.   :

                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
*IN LIMINE* TO BAR TESTIMONY FROM PLAINTIFF'S PROPOSED WITNESSES
(LARRY HOFF, SALVATORE MARCHIANO, KAITY TONG AND MARVIN SCOTT)
<u>AND TESTIMONY OR REFERENCES ABOUT ALLEGED AGE-BASED COMMENTS</u>**

Dated: New York, New York
       March 12, 2012

Edward Cerasia II
Anjanette Cabrera
Allison E. Ianni
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500

Attorneys for Defendant
*WPIX, Inc.*

## TABLE OF CONTENTS

Page

I.     PRELIMINARY STATEMENT ............................................................................1

II.    FACTUAL BACKGROUND ..............................................................................2

       A.     Kaity Tong, Marvin Scott, Sal Marchiano And Larry Hoff ...................2

              1.     Kaity Tong ...................................................................................2

              2.     Marvin Scott.................................................................................3

              3.     Salvatore Marchiano ....................................................................4

              4.     Larry Hoff ....................................................................................4

       B.     Barry Cunningham, Mary Murphy and Vanessa Tyler .........................5

III.   ARGUMENT ......................................................................................................6

       A.     THE COURT SHOULD BAR THE WITNESSES FROM TESTIFYING
              BECAUSE THEIR PURPORTED TESTIMONY VIOLATES THE FEDERAL
              RULES OF EVIDENCE ..............................................................................6

              1.     The Witnesses Lack Personal Knowledge Of Scott's Discrimination
                     Claims ..........................................................................................6

              2.     The Testimony Is Irrelevant To Scott's Claims...........................9

              3.     The Testimony Is Unduly Prejudicial To WPIX, Will Confuse the Jury,
                     And Will Result In Mini-Trials..................................................10

              4.     The Purported Testimony Is Improper Character Evidence .....................12

       B.     The Court Should Preclude Testimony About, Or Reference To, Any Alleged
              Age-Based Comments By Berlamino About Others ...........................13

IV.    CONCLUSION..................................................................................................13

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Bandera v. City of Quincy*,
344 F.3d 47 (1st Cir. 2003)...................................................................9

*Callanan v. Runyun*,
75 F.3d 1293 (8th Cir. 1996) ...............................................................9

*Campbell v. Alliance Nat'l Inc.*,
107 F. Supp. 2d 234 (S.D.N.Y. 2000)...................................................13

*Castro v. City of N.Y.*,
2009 WL 2461144 (E.D.N.Y. Aug. 10, 2009)...............................10, 11

*Danzer v. Norden Sys.*,
151 F.3d 50 (2d Cir. 1998)...................................................................13

*EEOC v. UMB Bank Fin. Corp.*,
558 F.3d 784 (8th Cir. 2009) ...............................................................12

*Guinan v. Potter*,
307 Fed. Appx. 92 (9th Cir. 2009).........................................................9

*Haskell v. Kaman Corp.*,
743 F.2d 113 (2d Cir. 1984)..................................................................10

*Hester v. BIC Corp.*,
225 F.3d 178 (2d Cir. 2000)...................................................................7

*Howley v. Town of Stratford*,
217 F.3d 141 (2d Cir. 2000)................................................................8, 9

*L'Etoile v. New Eng. Finish Sys., Inc.*,
575 F. Supp. 2d 331 (D.N.H. 2008).......................................................9

*LeBlanc v. Great Am. Ins. Co.*,
6 F.3d 836 (1st Cir. 1993).....................................................................9

*Levitant v. City of N.Y. Human Res. Admin.*,
2011 WL 795050 (E.D.N.Y. Feb. 28, 2011)..........................................8

*Lidle v. Cirrus Design Corp.*,
2011 WL 1642339 (S.D.N.Y. Apr. 25, 2011).......................................11

*Marfia v. T.C. Ziraat Bankasi*,
874 F. Supp. 560 (S.D.N.Y. 1994) ........................................................8

*Martin v. Reno*,
   2000 WL 1863765 (S.D.N.Y. Dec. 19, 2000) ........................................................9, 10, 11

*McKenna v. Chilton Co.*,
   1991 U.S. Dist. LEXIS 1472 (S.D.N.Y. Feb. 6, 1991) ...............................................6

*Moorhouse v. Boeing Co.*,
   501 F. Supp. 390 (E.D. Pa.), *aff'd*, 639 F.2d 774 (3d Cir. 1980) ...........................10

*New York v. St. Francis Hosp.*,
   94 F. Supp. 2d 423 (S.D.N.Y. 2000)........................................................................7

*Scott v. N.Y. City Dep't of Corr.*,
   445 Fed. Appx. 389 (2d Cir. 2011) ...........................................................................12

*Sprint/United Mgmt. Co. v. Mendelsohn*,
   552 U.S. 379 (2008).................................................................................................13

## FEDERAL RULES

Fed. R. Evid. 401 .................................................................................................9, 13

Fed. R. Evid. 403 ...............................................................................................10, 13

Fed. R. Evid. 404(a) .................................................................................................12

Fed. R. Evid. 602 .......................................................................................................6

Fed. R. Evid. 701 .......................................................................................................6

Fed. R. Evid. 801(c) ..................................................................................................9

## I. PRELIMINARY STATEMENT

Defendant WPIX, Inc. ("WPIX") respectfully submits this memorandum of law in support of its motion *in limine* to bar testimony from four of plaintiff Karen Scott's ("Scott's") proposed trial witnesses – Kaity Tong ("Tong"), Marvin Scott ("M. Scott"), Salvatore Marchiano ("Marchiano") and Larry Hoff ("Hoff") – and any testimony by Scott concerning age-related remarks allegedly made by Betty Ellen Berlamino ("Berlamino") about other employees.

Based upon Scott's deposition testimony, the deposition testimony of Tong and M. Scott, the Complaints filed by Marchiano and Hoff, Scott's opposition to summary judgment and the Joint Pretrial Order ("JTPO"), WPIX anticipates that Scott will seek to have these individuals testify that they felt that Berlamino discriminated against them because of their age.  The Court, however, should bar these witnesses from testifying because, based upon the available evidence and information, their testimony is not based on personal knowledge, is irrelevant to the claims in this case, will constitute impermissible hearsay, will cause significant prejudice to WPIX, will confuse the jury, will waste the Court and jury's time by requiring mini-trials addressing the employment and treatment of these four individuals, and constitutes impermissible character evidence.

WPIX also anticipates that Scott (and/or any of these individuals) will testify about age-based comments that Berlamino allegedly made about other WPIX employees.  The Court should bar any testimony about, or reference to, such alleged comments because these alleged comments are irrelevant to Scott's discriminatory termination claims in this case, given that the sole issue for the jury is the treatment of Scott and whether her age was the "but for" or "motivating" cause of WPIX's decision to terminate her employment, and prejudicial to WPIX.

For these reasons and those demonstrated below, the Court should grant WPIX's motion *in limine*.

## II. FACTUAL BACKGROUND

### A.    Kaity Tong, Marvin Scott, Sal Marchiano And Larry Hoff

Scott alleges in her Complaint and testified that Berlamino made age-related comments about other WPIX employees.  Specifically, Scott alleges that Berlamino said that:

- Tong, a current WPIX News Anchor, was "phoning it in" and was "too old for anchoring all the time," (Cerasia Decl., Ex. A - Scott Dep. at 245).[1]

- M. Scott, a current WPIX Senior Correspondent and anchor/host of a weekly issues-oriented show, was "too old," "isn't he ready to retire yet, why hasn't he retired yet," (*id.* at 258, 260);

- Marchiano, a former WPIX Sports News Anchor, "looks like he's phoning in, he doesn't react well on the set, and he seems to be too old," (*id.* at 261-62);[2] and

- Hoff, a former WPIX morning show Features Reporter, was "too old, repetitious and just not a good reporter," (*id.* at 213, 217-18, 220-21).

In the JPTO, Scott listed these four individuals as trial witnesses.  The following is a summary of the background facts relating to these proposed trial witnesses.

### 1.    Kaity Tong

Tong has been employed at WPIX since 1992, mostly as a News Anchor.  She currently is a News Anchor.  In early-June 2009, Tribune conducted a research study and the results showed that Tong was not popular among viewers.  (Cerasia Decl., Ex. D - Berlamino Dep. at 228-29.)  As a result, Tribune senior management believed that Tong should no longer continue as the lead anchor for the News at Ten.  (*Id.*)  Although Berlamino was able to convince Tribune

---

[1]    The deposition transcripts and exhibits cited herein are annexed to the Declaration of Edward Cerasia II ("Cerasia Decl."), submitted herewith.

[2]    Scott's sworn statements and testimony have changed over time with respect to what she claims Berlamino said about Marchiano:  her sworn EEOC charge stated that Berlamino said "he doesn't look good on the air," (Cerasia Decl., Ex. B - EEOC Charge, ¶ 21); her Complaint alleges that Berlamino said "'he doesn't look good on the air' due to his advanced age," (*id.*, Ex. C - Compl., ¶ 40), and she testified at her deposition that Berlamino allegedly said "he looks like he's phoning in, he doesn't react well on the set, and he seems to be too old," (*id.*, Ex. A - Scott Dep. at 261).

senior management to keep Tong in the Anchor position, management required that, to continue

in the position, Tong be issued a Performance Expectation Memo ("PEM") and take a reduction

in salary.  (Cerasia Decl., Ex. D - Berlamino Dep. at 231; *see also id*., Ex. E - Tong Dep. at 11-

12, 34-35, 38-39.)

Tong testified at her deposition that everything she knows or believes to have occurred

with respect to her salary reduction and PEM is based on *Scott's* version of the events – and not

on her own personal knowledge or observations.  (Cerasia Decl., Ex. E - Tong Dep. at 36, 39-42,

70.)  Indeed, Tong testified that she never heard Berlamino make any age-related comments

about her, that she never spoke with Berlamino directly about the PEM or the salary reduction,

that she does not know who made those decisions, and that she enjoyed a good working

relationship with Berlamino.  (*Id*. at 20, 37, 44, 53.)

### 2.   <u>Marvin Scott</u>

M. Scott began his employment as a weekly reporter with WPIX in 1980, and is currently

a Senior Correspondent and anchor/host of a weekly issues-oriented show for the station.

(Cerasia Decl., Ex. F - M. Scott Dep. at 6.)  His contract has been renewed many times since

1980, including by Berlamino in 2008 and years before then.  (*Id*.; Cerasia Decl., Ex. A - Scott

Dep. at 239.)  In September 2009 – after Scott's employment ended – WPIX changed M. Scott's

schedule to include weekend reporting in an effort to utilize an experienced reporter to increase

the low Nielsen ratings for the weekend News.  (Cerasia Decl., Ex. D - Berlamino Dep. at 282-

83.)  That schedule change did not result in a reduction in M. Scott's salary or a change in his

duties.  (Cerasia Decl., Ex. F - M. Scott Dep. at 15, 32-33.)

M. Scott testified that, while he never heard Berlamino make any age-related comments

about him, his agent told him (*i.e.*, double hearsay) that Berlamino had asked if M. Scott had any

intention of retiring.  (*Id*. at 19.)  M. Scott believed that when he was relieved of anchoring duties

3

at WPIX *in 2002*, it was because of his age.  (*Id.* at 9-10.)  M. Scott also believed that WPIX

changed his schedule in September 2009 to include weekend reporting (with no reduction in his

salary or changes in his duties and responsibilities – and thus not an adverse action as a matter of

law) because of his age.  (*Id*. at 15-17, 32-33.)  Yet, M. Scott admitted that his beliefs are based

on "conjecture" and his observations.  (*Id*. at 10, 34.)

### 3. Salvatore Marchiano

Marchiano joined WPIX in 1994, as a Sports Anchor for the News at Ten.  (*See* Cerasia

Decl., Ex. G - Marchiano Compl., ¶ 11.)  In late-2008 – 10 months before Scott's own

termination – WPIX decided not to renew Marchiano's contract because he began to appear

unprepared and unprofessional on the air, and seemed to be "phoning it in."  (Docket No. 21,

Def.'s 56.1, ¶¶ 151, 154.)  For example, Marchiano would often read the wrong sports scores,

look at the wrong camera or, if the teleprompter failed, stare at the camera until someone told

him what to say; he failed to improvise or compensate for any technical problems.

Marchiano filed his own age discrimination lawsuit in this District, which is assigned to

Judge Leonard Sand.  (*See generally* Cerasia Decl., Ex. G - Marchiano Compl.)  Most notably,

Marchiano's allegation that Berlamino commented about his age (*i.e.*, he did not look good on

the air) is solely based on the allegations in Scott's Complaint.  (*Id*., ¶¶ 28, 29.)

### 4. Larry Hoff

Hoff joined WPIX in 2000 as a Morning News Features Reporter and became known for

his daredevil stunts.  (Cerasia Decl., Ex. H - Hoff Compl., ¶ 13.)  In late-2009, WPIX did not

renew Hoff's contract because his segments became stale, uncreative and repetitive, and the cost

to WPIX of producing his segments was high, as he required his own crew on a daily basis.

(Cerasia Decl., Ex. D - Berlamino Dep. at 278.)  The change in corporate leadership at Tribune

and Tribune's subsequent bankruptcy made Hoff's role a focus of Tribune senior management

because WPIX was spending a significant amount of money on his reporting segments and there was limited, if any, return on those investments.  Management also felt that Hoff's reporting segments contained more "fluff" than hard news content, but it needed to go in a different direction to focus on hard news content.

Hoff also has filed his own age discrimination lawsuit in this District, which also is assigned to Judge Sand.  Hoff's Complaint also relies on Scott's allegations in this case, as well as on speculative and hearsay conversations that Hoff allegedly had with his crew regarding age discrimination against Marchiano and M. Scott and online gossip he claims to have read regarding WPIX's personnel decisions.  (Cerasia Decl., Ex. H - Hoff Compl., ¶¶ 29, 33.)

**B.**   **Barry Cunningham, Mary Murphy and Vanessa Tyler**

Scott also testified that Berlamino made alleged age-based comments about former WPIX employees Barry Cunningham ("Cunningham"), Mary Murphy ("Murphy") and Vanessa Tyler ("Tyler"), but she does not list these individuals as trial witnesses.  As to these individuals, Scott claims Berlamino said that:

- Cunningham, a former News reporter *who last worked at WPIX in the Summer of 2002*, was "too old" and did not "look good on the air," (Cerasia Decl., Ex. A - Scott Dep. at 254);

- Murphy, a former weekend News anchor and current reporter, "looked old" and "had frumpy clothes," (*id.* at 274, 276); and

- Tyler, a former reporter at WPIX's New Jersey bureau who was let go when that bureau closed, "didn't dress appropriately for a reporter" and was "too old," (*id.* at 278).

5

### III. <u>ARGUMENT</u>

**A.    THE COURT SHOULD BAR THE WITNESSES FROM
TESTIFYING BECAUSE THEIR PURPORTED TESTIMONY
<u>VIOLATES THE FEDERAL RULES OF EVIDENCE</u>**

The Court should preclude Tong, M. Scott, Hoff and Marchiano from testifying at trial

because, as demonstrated below, they each lack any personal knowledge of Scott's

discrimination claims or any alleged discrimination by Berlamino, and their anticipated

testimony would be irrelevant, highly prejudicial, confuse the jury, result in a series of mini-trials

that would waste the Court and jury's time, and would constitute improper character evidence.

#### 1.     <u>The Witnesses Lack Personal Knowledge Of Scott's Discrimination Claims</u>

Rule 602 of the Federal Rules of Evidence makes clear that a witness may only testify to

a matter upon which he or she has "personal knowledge":  "A witness may testify to a matter

only if evidence is introduced sufficient to support a finding that the witness has personal

knowledge of the matter."  Fed. R. Evid. 602.  "This rule expresses the law's preference that

courts base their decisions on the best evidence available, and stands as one of the central

principles of the Federal Rules of Evidence."  *McKenna v. Chilton Co.*, 1991 U.S. Dist. LEXIS

1472, at *7 (S.D.N.Y. Feb. 6, 1991) (citing 3 J. Weinstein & M. Berger, Weinstein's Evidence,

¶ 602, at 602-3).  In addition, Rule 701 of the Federal Rules of Evidence states:  "If a witness is

not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a)

rationally based on the witness's perception; (b) helpful to clearly understanding the witness's

testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other

specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  "The first limitation

set forth in the rule is the requirement of first-hand knowledge or observation, the same principle

embodied in Rule 602."  *McKenna*, 1991 U.S. Dist. LEXIS 1472, at *14.  The "helpfulness

requirement is designed to ensure against 'opinions which merely tell the jury what result to

6

reach.'" *New York v. St. Francis Hosp.*, 94 F. Supp. 2d 423, 427 (S.D.N.Y. 2000) (quoting Fed. R. Evid. 704 advisory committee's note). Tong, M. Scott, Marchiano and Hoff lack the first-hand knowledge required under Fed. R. Civ. P. 602 and 701 to be competent witnesses at trial, and thus the Court should bar them from testifying.

Tong, M. Scott, Marchiano and Hoff lack personal knowledge of any alleged discrimination against Scott. Indeed, there is no evidence that Tong, M. Scott, Marchiano or Hoff have any personal knowledge about WPIX's treatment of Scott, whether Scott was adequately performing her job, or the reasons for the decision to terminate her employment. Thus, their testimony is inadmissible and should be precluded. *Hester v. BIC Corp.*, 225 F.3d 178, 185 (2d Cir. 2000) (concluding that district court erred in permitting testimony from witnesses who were not involved in decision-making process concerning plaintiff's employment and did not have personal knowledge about it; nor did they know whether plaintiff was adequately performing her job).

These witnesses also lack personal knowledge about alleged discrimination toward themselves. Tong testified at her deposition that everything she knows or believes to have occurred with respect to her own salary reduction and performance memorandum is based on *Scott's* version of the events – and not on her own personal knowledge or observations. (Cerasia Decl., Ex. E - Tong Dep. at 36, 39-42, 44, 53, 70.) Indeed, Tong never heard Berlamino make any age-related comments about her. (*Id.* at 20.) Similarly, M. Scott testified that he never heard Berlamino make any age-related comments about him, and only believes that she may have harbored discriminatory animus based on hearsay and conjecture. (Cerasia Decl., Ex. F - M. Scott Dep. at 10, 34, 19.)

Additionally, as noted above, while neither Hoff nor Marchiano have been deposed in this lawsuit or in their own lawsuits, their respective Complaints pending before Judge Sand make clear that neither has personal knowledge of any alleged discriminatory actions against them.  (*See* Cerasia Decl., Ex. G - Marchiano Compl., ¶¶ 24-29; *id.*, Ex. H - Hoff Compl., ¶¶ 25-30.)  Notably, Marchiano's Complaint *specifically* states that Scott's Complaint is the sole basis for his contention that Berlamino allegedly commented that he did not look good on the air.  (Cerasia Decl., Ex. G - Marchiano Compl., ¶¶ 28, 29.)  Hoff's Complaint likewise relies on Scott's allegations in her Complaint in this case, as well as on conversations Hoff allegedly had with his crew in which they speculated that WPIX discriminated against Marchiano and M. Scott due to their age, and based on rumors he read on the internet regarding WPIX's personnel decisions.  (Cerasia Decl., Ex. H - Hoff Compl., ¶¶ 29, 33.)

Because it is clear from Tong and M. Scott's deposition testimony and from Hoff's and Marchiano's own Complaints that their contentions of discriminatory treatment toward them are based upon nothing more than pure conjecture or what they learned through Scott or others, their testimony should be excluded for lacking personal knowledge or as rank hearsay.  *See*, *e.g.*, *Levitant v. City of N.Y. Human Res. Admin.*, 2011 WL 795050, at *5 (E.D.N.Y. Feb. 28, 2011) (granting motion *in limine* to preclude testimony of non-party witnesses who had no direct knowledge of discrimination and whose testimony would be based on hearsay rather than direct knowledge); *Marfia v. T.C. Ziraat Bankasi*, 874 F. Supp. 560, 563-64 (S.D.N.Y. 1994) (granting defendant's motion *in limine* to preclude plaintiff from testifying as to the departures of six former employees "because it is apparent that plaintiff lacks personal knowledge of the facts in question"); *see also Howley v. Town of Stratford*, 217 F.3d 141, 155 (2d Cir. 2000) (testimony regarding alleged discriminatory comments by supervisor would be not admissible because they

8

were told to plaintiff by co-workers and were not based on personal knowledge); *Callanan v. Runyun*, 75 F.3d 1293, 1298 (8th Cir. 1996) ("generalized, subjective" assertions of discrimination were properly excluded as improper lay opinion); *L'Etoile v. New Eng. Finish Sys., Inc.*, 575 F. Supp. 2d 331, 339 (D.N.H. 2008) (noting that the First Circuit has ruled that it is 'wholly inappropriate opinion testimony" for a witness to give "assessments of what [the plaintiff] reported to have happened" as a factual matter) (citing *Bandera v. City of Quincy*, 344 F.3d 47, 54 (1st Cir. 2003)); Fed. R. Evid. 801(c).

## 2.    The Testimony Is Irrelevant To Scott's Claims

The Court also should bar testimony about, or references to, alleged age discrimination against Tong, M. Scott, Marchiano or Hoff (or other employees) because it is wholly irrelevant to Scott's claims.  Fed. R. Evid. 401.  That is because the only issue in this disparate treatment case is how *Scott* "was treated, and why," *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 848 (1st Cir. 1993), and not how WPIX may have treated others.  *Martin v. Reno*, 2000 WL 1863765, at *4 (S.D.N.Y. Dec. 19, 2000) (granting motion *in limine* because testimony from witnesses about discrimination that did not involve plaintiff was "entirely irrelevant to [plaintiff's] claims").

Moreover, none of these individuals were similarly situated to Scott.  Scott, as News Director, had responsibilities that were entirely different from those of Tong, M. Scott, Marchiano or Hoff, who, as anchors or reporters, were and are on-air personalities for WPIX. The reasons leading to the termination of Scott's employment were thus far different from the reasons for the non-renewal of Hoff or Marchiano's contracts – and Tong and M. Scott are still employed by WPIX.  As such, their testimony should be excluded as irrelevant.  *See Guinan v. Potter*, 307 Fed. Appx. 92, 92-93 (9th Cir. 2009) (district court properly excluded evidence by requiring that "similarly situated" employee-witnesses "have similar jobs and display similar conduct" to the plaintiff).

9

3.    **The Testimony Is Unduly Prejudicial To WPIX,**
      **Will Confuse the Jury, And Will Result In Mini-Trials**

The Court also should exclude the proposed testimony of Tong, M. Scott, Marchiano and

Hoff because their testimony will be unfairly prejudicial to WPIX, and will simply confuse the

jury and result in collateral mini-trials in any event.  *See* Fed. R. Evid. 403; *Castro v. City of*

*N.Y.*, 2009 WL 2461144, at *7 (E.D.N.Y. Aug. 10, 2009) (precluding testimony of witness who

also purportedly suffered from discrimination under similar circumstances because any probative

value was outweighed by the danger of unfair prejudice to defendants, confusion of the issues,

misleading of the jury, and undue delay); *Martin*, 2000 WL 1863765, at *4 (testimony from

witnesses about discrimination that did not involve plaintiff was "entirely irrelevant to

[plaintiff's] claims, and would merely protract the trial by taking the testimony too far afield

from [plaintiff's] actual claims.  Thus, plaintiff is precluded from submitting any evidence about

claims of discrimination other than his own.").

Even the strongest jury instructions will not dull the prejudicial impact of permitting the

jury to hear Tong, M. Scott, Marchiano and/or Hoff recount their contentions that WPIX

discriminated against them based on their age.  *Haskell v. Kaman Corp.*, 743 F.2d 113, 120-22

(2d Cir. 1984) (concluding that the district court erred in permitting several witnesses to recount

their contention that they had been terminated because of their age, stating "even the strongest

jury instructions could not have dulled the impact of a parade of witnesses, each recounting his

contention that defendant laid him off because of his age"); *Moorhouse v. Boeing Co.*, 501 F.

Supp. 390, 393 n.4 (E.D. Pa.), *aff'd*, 639 F.2d 774 (3d Cir. 1980); Fed. R. Evid. 403.  This is

particularly true in this case, given the celebrity status of these witnesses, who appear or have

appeared on television for years to give viewers "the facts" about news stories, and those viewers

– *i.e.*, potential jurors – would have given credence to their news stories as "facts" because of

their roles as anchors or reporters of "the facts."  *Lidle v. Cirrus Design Corp.*, 2011 WL

1642339, at *2 (S.D.N.Y. Apr. 25, 2011) ("Given the minimal relevance of the testimony and the

substantial likelihood of prejudice given the celebrity status of the proposed witnesses,

Defendant's motion to exclude is granted.").

  Permitting Tong, M. Scott, Hoff, and/or Marchiano to testify also would waste the time

and resources of the Court, jury and parties because their testimony will inevitably turn the trial

into *four* mini-trials of employment decisions and alleged conduct toward these non-party

witnesses, forcing WPIX to respond to these claims by presenting an entire trial-like response to

each individual's allegations or otherwise be prejudiced.  The burden on WPIX, and the waste of

time for the Court and jury, for these mini-trials will be substantial.  For example, admitting the

proffered testimony would prolong the trial and require WPIX to explain to the jury the decisions

surrounding Tong's roles on the News, compensation and contracts, M. Scott's work

assignments and contracts, as well as the circumstances surrounding Hoff and Marchiano's

terminations and the reasons for those decisions, and then explain to the jury their involvement in

this lawsuit, in which they have no relevant or first-hand knowledge about Scott's claims.  This

alone warrants excluding their testimony.  *E.g., Castro*, 2009 WL 2461144, at *7 (excluding

witness because testimony as to his belief that he was unlawfully denied employment was "'too

far afield' from plaintiff's claims" and would mislead and confuse the jury, and prejudice

defendant); *Martin*, 2000 WL 1863765, at *4 (precluding witnesses' testimony about alleged

discrimination that did not involve plaintiff because of prejudice and risk of mini-trials).

  Moreover, Hoff and Marchiano have their own lawsuits pending in which they allege age

discrimination in connection with their employment at WPIX.  Allowing them to introduce their

allegations at the trial in this case would not only waste time trying two other lawsuits, but doing

so also would deny WPIX due process because it would be forced to defend claims at Scott's

trial that are the subject-matter of entirely unrelated cases, where discovery is on-going at this

time.  *See EEOC v. UMB Bank Fin. Corp.*, 558 F.3d 784, 794 (8th Cir. 2009) (holding that

district court correctly excluded testimony concerning a witness who also had a pending

discrimination claim against defendant because that evidence consisted of little more than

allegations with limited probative value and it would have required extensive examination of

wholly collateral issues regarding not only the specifics of that witness's allegations, but also the

truth and merit of those allegations, and adopting district court's rationale that "'We are not

going to try another lawsuit.  We have enough to manage.'").

       For these reasons, the Court should bar this proposed testimony and thus avoid a side

show that will only distract the jury and double the length of the trial.

### 4.    The Purported Testimony Is Improper Character Evidence

       Any testimony or reference by Scott or her witnesses to alleged conduct or comments by

Berlamino should be excluded under Fed. R. Evid. 404(a), which prohibits the admission of

character evidence except under very limited circumstances that do not exist here.  Rule 404(a)

states in relevant part that "[e]vidence of a person's character or character trait is not admissible

to prove that on a particular occasion the person acted in accordance with the character or trait."

Fed. R. Evid. 404(a); *see also Scott v. N.Y. City Dep't of Corr.*, 445 Fed. Appx. 389, 391 (2d Cir.

2011) (Summary Order affirming ruling that evidence of co-workers' harassment allegations

were inadmissible because it was offered to prove the character of defendant in order to show

action in conformity therewith).

       Clearly, Scott seeks to present all of this testimony solely to show that Berlamino had a

propensity to engage in alleged age discrimination.  Such testimony would be highly prejudicial

and used improperly to lure the jury into believing that Scott's age was the "but for" or

motivating factor in her termination – which it was not.  Therefore, the Court should exclude any

such testimony or references to alleged comments under Fed. R. Evid. 404(a).

**B.      The Court Should Preclude Testimony About, Or Reference To,
         Any Alleged Age-Based Comments By Berlamino About Others**

The alleged references to Berlamino's stray remarks regarding Hoff, Marchiano,

M. Scott, Tong, Murphy, Cunningham and Tyler are prejudicial, irrelevant, and wholly unrelated

to the decision to terminate Scott's employment and therefore cannot possibly be construed as

competent evidence of age discrimination toward Scott with respect to the termination of her

employment.  Fed. R. Evid. 401 & 403; *Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998)

(stating that "stray comments" without "other indicia of discrimination" are insufficient to prove

discrimination); *see also Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379 (2008) (Supreme

Court held that relevance of alleged "me too" evidence in an individual ADEA case depends on

"how closely related the evidence is to the plaintiff's circumstances and theory of the case").

This is particularly true given that the non-renewal of Marchiano's contract occurred more than

10 months prior to Scott's termination and Cunningham's employment ended in 2002.  Thus, any

alleged discriminatory remarks regarding Marchiano or Cunningham are too remote in time to be

probative.  *E.g.*, *Campbell v. Alliance Nat'l Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000)

(stray remark remote in time from adverse action not sufficient to prove discrimination).

## IV.  CONCLUSION

For the foregoing reasons, the Court should exclude the testimony of Tong, M. Scott,

Marchiano and Hoff, as well as any testimony by Scott regarding her beliefs that others were

13

discriminated against on the basis of their age and the alleged age-based comments by Berlamino about other WPIX employees.

Dated:  New York, New York
        March 12, 2012

                                    Respectfully submitted,

                                    SEYFARTH SHAW LLP

                                    By s/ Edward Cerasia II
                                        Edward Cerasia II
                                        Anjanette Cabrera
                                        Allison E. Ianni
                                    620 Eighth Avenue, 32nd Floor
                                    New York, New York 10018-1405
                                    (212) 218-5500

                                    Attorneys for Defendant
                                     WPIX, Inc.