UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAREN SCOTT,<br><br>                    Plaintiff,<br><br>          -against-<br><br>WPIX, INC.,<br><br>                    Defendant. | 10 CV 4622 (WHP) |

## JOINT PROPOSED JURY INSTRUCTIONS

The parties hereby submit the following proposed jury instructions which are intended to supplement the Court's general instructions.

Dated: July 16, 2012

HAYNES AND BOONE, LLP
*Counsel for Plaintiff*


By: s/Kenneth J. Rubinstein
    Kenneth J. Rubinstein
    Sarah Jacobson
    30 Rockefeller Plaza, 26th Floor
    New York, New York 10112
    (212) 659-7300


OGLETREE, DEAKINS, NASH, SMOAK & STEWART P.C.
*Counsel for Defendant*


By: s/ Edward Cerasia II
    Edward Cerasia II
    Anjanette Cabrera
    Allison E. Ianni
    1745 Broadway, 22nd Floor
    New York, New York 10019
    (212) 492-2500

## BURDEN OF PROOF AND PREPONDERANCE OF EVIDENCE

This is a civil case.  In a civil action, the burden is on the Plaintiff, Karen Scott, to prove each element of her claim by a preponderance of the evidence.

To establish a "preponderance of the evidence" means to prove that something is more likely so than not so.  In other words, a preponderance of the evidence in this case means such evidence as, when considered and compared with that opposed to it, has more convincing force, and produces in your minds the belief that what is sought to be proved is more likely true than not true.  This rule does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

In determining whether any fact in issue has been proved by a preponderance of the evidence in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

3 Fed. Jury Prac. & Instru. § 104.01 (5th Ed.)

## WITNESS CREDIBILITY

You have had the opportunity to observe all of the witnesses.  It is now your job to decide how believable each witness was in his or her testimony.  You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

You are being called upon to resolve various factual issues raised by the parties.  In making these judgments, you should carefully scrutinize the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness' testimony.

You have watched each witness testify. Everything a witness said or did on the witness stand counts in your determination.  How did the witness impress you?  Did he/she appear to be frank, forthright and candid, or evasive and edgy as if hiding something?  How did the witness appear; what was his or her demeanor -- that is, his or her behavior, bearing, manner and/or appearance while testifying?

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witness had to see, hear, and know the things about which he testified, the accuracy of his memory, his candor or lack of candor, his intelligence, the reasonableness and probability of his testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given and all of the other evidence in the case. You should use your common sense, your good judgment and your own life experience in order to make these determinations.

4-76 Modern Federal Jury Instructions – Civil P 76.01; *Dyer v. MacDougall*, 201 F.2d 265 (2d Cir. 1962)

## DISCREPANCIES IN TESTIMONY

You have heard discrepancies in the testimony of certain witnesses, and argument that such discrepancies are a reason for you to reject the testimony of those witnesses.

You are instructed that evidence of discrepancies may be a basis to disbelieve a witness' testimony.  On the other hand, discrepancies in a witness' testimony or between his testimony and that of others do not necessarily mean that the witness' entire testimony should be discredited.

Remember that even a truthful witness may be nervous and contradict himself.  Two people witnessing an event will see or hear it differently.  Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance; but a willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in his or her testimony.  You should, as always, use common sense and your own good judgment.

4-76 Modern Federal Jury Instructions – Civil P 76.01; *Dyer v. MacDougall*, 201 F.2d 265 (2d Cir.  1962)

## FAILURE TO PRODUCE EVIDENCE

**I.**     **Ms. Scott's Proposed Instruction**

You have heard testimony about evidence that has not been produced.  More specifically, you have heard that, despite requests for the documents, WPIX failed to produce (1) Ms. Scott's performance evaluations for the years 2007 and 2008, and (2) documents reflecting the date on which the memorandum drafted by Ms. Berlamino with the notation "November 2, 2008" (Exhibit 77) was created.

With respect to Ms. Scott's 2007 and 2008 performance evaluations, it is Ms. Scott's position that WPIX's failure to produce these evaluations for the two years which immediately preceded her termination supports an inference that Ms. Scott's performance continued to be satisfactory during those years.

With respect to documents reflecting the date on which the memorandum with the "November 2, 2008" notation was created, it is Ms. Scott's position that WPIX's failure to produce any documents reflecting the date of creation supports an inference that the memorandum was not in fact created in November or even December 2008, but was created by Ms. Berlamino at a later date and that she handwrote the "November 2, 2008" notation on the document whenever it was created in an attempt to create the impression that the document was in fact created on or around that date.

If you find that the 2007 and 2008 performance evaluations and/or the documents reflecting the date on which the document that has the notation "November 2, 2008" was created was or should have been in WPIX's control and that this evidence would have been material in deciding among the facts in dispute in this case, then you are permitted to infer that the evidence would have been unfavorable to WPIX.

In deciding whether to draw this inference, you should consider whether the evidence not produced would merely have duplicated other evidence already before you. You may consider whether WPIX had a reason for not producing this evidence, which was explained to your satisfaction. Any inference you decide to draw should be based on the facts and circumstances of this case.

4-75 Modern Federal Jury Instructions – Civil P 76.01; *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376 (2d Cir. 2001); *Mulqueen v. Daka*, Inc., 909 F. Supp. 86, 95 (N.D.N.Y. 1995)

## II.   WPIX's Response to Proposed Instructions

WPIX objects to any adverse inference instruction on the grounds that Ms. Scott has not met her burden of showing that she is entitled to an adverse inference charge. A party seeking an adverse inference instruction must show (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Stephen v. Hanley*, 2009 WL 1437613, at *2 (E.D.N.Y. May 20, 2009). "In addition to the foregoing three requirements for spoliation . . . *the evidence must have existed.*" *Id.* (emphasis added) (denying plaintiffs' motion because plaintiffs failed to show that certain documents ever existed, let alone were destroyed, and, moreover, failed to identify any court order that defendants violated regarding production of those documents); *see also Gutierrez-Bonilla v. Target Corp.*, 2009 WL 5062116, at *3-4 (E.D.N.Y. Dec. 16, 2009) (denying plaintiff's motion for an adverse inference where deposition testimony established that video footage did not exist and plaintiff produced no evidence to the contrary); *Hawknet v. Overseas Shipping Agencies,*

2009 WL 1309854, at *7 (S.D.N.Y. May 6, 2009) (no adverse inference because, although plaintiffs' argument was plausible, they provided no "hard evidence" that documents existed which were destroyed or withheld).

Ms. Scott has failed even to show the *existence* of the 2007 and 2008 performance reviews or of any documents reflecting the date on which the "November" 2, 2008 memorandum was created. Indeed, throughout discovery in this case, WPIX maintained that it was not in possession of any documents reflecting the date on which the November 2, 2008 memorandum was created and that the document was only kept in hard copy form. Furthermore, Ms. Berlamino testified at her deposition that, after drafting the memorandum on her computer, she printed the hard copy and placed it in her file. (Berlamino Dep. 173:14-19; 174:4-5). Absent Ms. Scott's presentation of proof that Ms. Berlamino's hard drive retained any information that would establish the date on which the memorandum was created, she is not entitled to an adverse inference instruction. *See Valenti v. Penn Mut. Life Ins. Co.*, 2012 WL 1034535, at *5-6 (S.D.N.Y. Mar. 28, 2012) (denying request for adverse inference instruction based on defendant's failure to produce metadata and noting further with respect to other documents that "[w]here a plaintiff cannot offer any evidence to indicate that a document ever existed, the plaintiff is not entitled to an adverse inference based on the nonproduction of the document.").

WPIX likewise represented throughout this case that Ms. Scott was not issued any performance reviews for 2007 or 2008. There is simply no evidence here that any of the documents ever existed, much less that WPIX destroyed them with a culpable state of mind. Consequently, an adverse inference instruction is clearly inappropriate and will be prejudicial to WPIX.

### III.   Ms. Scott's Reply to WPIX's Position

Ms. Scott is entitled to the requested instruction with respect to 2007 and 2008 performance reviews and the November 2, 2008 memorandum.

First, contrary to WPIX's representation, Betty Ellen Berlamino testified that she completed performance reviews for Ms. Scott in 2007 and in 2008.  (Berlamino Dep., 122:22-25) It is therefore acknowledged that these highly relevant documents existed.  Further, WPIX has failed to provide any explanation as to why the 2007 and 2008 reviews have not been produced. If produced, these performance reviews (as the others that preceded them) would confirm that there was no documentation of any issues related to Ms. Scott's performance and, to the contrary, would confirm that Ms. Scott consistently received positive performance reviews. WPIX's unexplained failure to produce these documents has prevented Ms. Scott from further supporting her position.  This is precisely the situation for which an adverse inference is appropriate.

Second, with respect to the November 2, 2008 memorandum, WPIX acknowledged that it was unable to locate documents to establish the date on which the November 2, 2008 memorandum was created. (WPIX's response to Ms. Scott's Requests for Admission, dated April 18, 2011)  Berlamino, however, testified that she created the document on her work computer on or about November 2, 2008. (Berlamino Dep. 167:2-169:10; 173:15-174:5)  She testified that, after she created the document on her work computer, she printed it and put a copy in her work file.  (*Id.*)  Consequently, at a minimum, WPIX had in its possession, custody, and/or control metadata and other computer information that reveal when the document was created. However, WPIX has failed to produce any document indicating that the November 2, 2008 memorandum was in fact created on Berlamino's computer or when the document was actually created.

## APPLICABLE LEGAL STANDARDS – AGE DISCRIMINATION

### I.    Ms. Scott's Proposed Instructions

This is an action to recover damages for employment discrimination based on age.  The law prohibits employment discrimination based on age.  In this case, Ms. Scott claims that she was terminated because of her age.  Her claims are based on three different statutes: the New York City Human Rights Law, the New York State Human Rights Law, and the Federal Age Discrimination in Employment Act.  These statutes have different standards of proof.

In order for Ms. Scott to recover under the New York State or New York City statutes, she must prove, by a preponderance of the evidence, that her age was a motivating factor in WPIX's decision to terminate her employment.  There can be more than one motivating factor in any decision.  Therefore, Ms. Scott need not prove that age was the only reason for WPIX's decision to terminate her employment.  Age is a motivating factor if it made a difference in whether or not Ms. Scott would have been terminated.

In order for Ms. Scott to recover under the Federal statute (the Age Discrimination in Employment Act), Ms. Scott must prove, by a preponderance of the evidence, that her age was the "but for" factor in WPIX's decision to terminate her employment.  In order to show that Ms. Scott's age was the "but-for" factor, Ms. Scott must show that, except for the consideration of her age, WPIX would not have terminated her employment.  Ms. Scott may prove this through direct or circumstantial evidence.

Ms. Scott is not required to produce direct evidence that WPIX discriminated against her on the basis of her age.  Discrimination is rarely admitted and may be inferred from the existence of other facts.

WPIX has offered evidence claiming that there was a non-discriminatory reason for Ms. Scott's termination (*i.e.,* her performance).  Ms. Scott claims that her performance was not the real reason she was terminated.

You should consider whether WPIX's articulated reason for its decision to terminate Ms. Scott is the true reason why Ms. Scott was fired or whether the true reason for the termination was Ms. Scott's age.  If you do not believe WPIX's explanation for its action, then you may infer that the real reason Ms. Scott was terminated was because of her age.


New York Pattern Jury Instructions 9:1; *Stephenson v. Hotel Employees and Restaurant Employees Union Local 100 of the AFL-CIO,* 6 N.Y.3d 265 (2006); 5-88 Modern Federal Jury Instructions – Civil P 88.27; *Grant v. Hazelett Strip-Casting Corp.,* 880 F.2d 1564 (2d Cir. 1989); 5-88 Modern Federal Jury Instructions – Civil P 88.37A; *Carlton v. Mystic Transp., Inc.,* 202 F.3d 129 (2d Cir. 2000).


## II.    WPIX's Response to Proposed Instructions

Ms. Scott claims that WPIX discriminated against her because of her age when it terminated her employment and brings her claims under the federal Age Discrimination in Employment Act of 1967 (the "ADEA"), the New York State Human Rights Law (the "State Law"), and the New York City Human Rights Law (the "City Law").  WPIX, on the other hand, denies Ms. Scott's age discrimination claims and maintains that it had legitimate, non-discriminatory reasons for its decision to terminate her employment.

In order to prevail on her age discrimination claims under any of the three laws, Ms. Scott must prove, by a preponderance of the evidence, that WPIX intentionally discriminated against her because of her age.  The mere fact that Ms. Scott was age 60 at the time her employment

with WPIX ended is not sufficient, in and of itself, to prove her age discrimination claims. You are instructed that at all times the burden of proof in this lawsuit remains with Ms. Scott to prove she was the victim of intentional age discrimination. WPIX does not have the burden of proving that it did not discriminate against her.

**A.    Claim under the ADEA**

WPIX has stated legitimate, non-discriminatory reasons for its decision to terminate Ms. Scott's employment. Therefore, to prevail on her claim under the ADEA, Ms. Scott must prove by a preponderance of the evidence that each reason given by WPIX was not the true reason for its decision <u>and</u> that her age was the "but-for cause" of her termination. By "but-for cause," I mean "the reason" for WPIX's decision.

It is not enough that Ms. Scott prove that WPIX's reasons were not the true reasons. Rather, she must prove by a preponderance of the evidence that her age was "the reason" that WPIX terminated her employment. That is, if you believe Ms. Scott's evidence and are persuaded by a preponderance of the evidence that except for her age, WPIX would not have terminated her employment, then you must find for Ms. Scott. You cannot conclude that a stated reason was a pretext for age discrimination unless you conclude <u>both</u> that WPIX's stated reasons were false <u>and</u> that the real reason for the decision was to discriminate against Ms. Scott because of her age.

If an employer's decision with regard to an employee is motivated in whole or in part by factors other than age, such as job performance, it does not violate the ADEA. Furthermore, Ms. Scott's own subjective belief that she was discriminated against is not enough to meet her burden of proof. Nor is it enough for Ms. Scott to speculate or show a mere possibility that the reasons given by WPIX were untrue or that the real reason for her termination was her age.

Simply disproving or not believing WPIX's stated reasons, in and of itself, is not sufficient to establish a claim of age discrimination. Rather, Ms. Scott must produce affirmative evidence of intentional age discrimination.  A showing that WPIX's asserted reasons for its decision were false may serve as evidence that WPIX intentionally discriminated against Ms. Scott because of her age because, in some cases, an employer's offer of a false or inaccurate reason may be a mask for unlawful discrimination.

Discrimination, however, does not lurk behind every inaccurate statement.  Individual decision-makers may be intentionally evasive about the reason for a decision in order to hide a reason that is non-discriminatory, but is unbecoming, embarrassing, or small-minded or that shows favoritism for someone else.  In short, even if you find that the reasons offered by WPIX were false or incomplete, it would not necessarily mean that Ms. Scott's age was the but-for cause of the decision to terminate her employment.

Thus, the significance of finding a pretext – that is, finding that WPIX's explanation for its decision was false – should you make such a finding, depends on all the circumstances of the case.  It is a piece of circumstantial evidence which you may employ, along with everything else before you, to determine the state of mind of any decision-maker.  To the extent that an employer in WPIX's position would be unlikely to have given a false or incomplete explanation for its decision except to conceal an unlawful discriminatory motive, then a false or incomplete explanation may be evidence of discrimination.  On the other hand, if the circumstances are such that the employer gave a false or incomplete explanation to conceal something other than age discrimination, the giving of such an explanation will be less significant.  And if, on examination of the circumstances, there are many possible reasons for the giving of a false or incomplete

explanation, stated or unstated, and illegal discrimination is no more likely a reason than others, then a finding of pretext would give minimal support to a claim of age discrimination.

At all times, Ms. Scott bears the burden of persuading you that her age was the but-for cause of, or "the reason" for, WPIX's decision to terminate her employment. In determining whether Ms. Scott's age was the reason for WPIX's decision to terminate her employment, you must consider any evidence of intent that may be available from the direct or circumstantial evidence that has been presented by both sides.

In considering whether Ms. Scott has met her burden of proving her age discrimination claim under the ADEA, you must keep in mind that WPIX was entitled to make any business judgment or decision it chose – however unfair, unwise, misguided or unreasonable that judgment or decision may seem to you – so long as it did not discriminate against Ms. Scott. You are not to decide whether, had you been her employer, you would have made the same decision. You are not to judge whether WPIX's decision to terminate Ms. Scott's employment was unfair, right or wrong from a management or business standpoint. You are not to second-guess the wisdom of WPIX's decision. WPIX was entitled to make this decision for any reason, or even for no reason at all, so long as her age was not the but-for cause of the decision.

WPIX does not have the burden of establishing that its decision to terminate Ms. Scott's employment was sound or correct, or that it was actually motivated by the stated reasons; the question is not whether WPIX showed poor or erroneous judgment. It is not necessary that you believe that WPIX made the correct decision.

If you find that Ms. Scott has met her burden of proving that her age was the "but-for" cause of her termination, then you must find for her on the ADEA claim. On the other hand, if

you find that Ms. Scott has not met her burden of proving that her age was the "but-for" cause of her termination, then you must find for WPIX on the ADEA claim.

### B.      Claims under the State and City Laws

The State[1] and City Laws require that an employer ignore age when making employment decisions.  Unlike the ADEA, the State and City Laws do not require Ms. Scott to prove that her age was the sole or primary factor in WPIX's decision to terminate her employment.  Rather, under the State and City Laws, Ms. Scott must prove that her age was a motivating factor in the decision to terminate her employment.

Because WPIX has stated legitimate, non-discriminatory reasons for its decision to terminate Ms. Scott's employment, to prevail on her claims under both the State Law and the City Law, Ms. Scott must prove by a preponderance of the evidence that each reason given by WPIX was not the true reason for its decision.  It is not enough that Ms. Scott prove that WPIX's reasons were not the true reasons.  Rather, she also must prove by a preponderance of the evidence that her age was a motivating or determinative factor in WPIX's decision to terminate her employment.  What does "motivating factor" mean?  She is only required to show that her age played a role in WPIX's decision-making process <u>and</u> that her age had a determinative influence on the outcome.

In deciding whether each reason given by WPIX for its decision to terminate Ms. Scott is a pretext for intentional age discrimination, you are really being asked to decide the motivation

---

[1]     In its Memorandum & Order on WPIX's Motion for Summary Judgment, this Court held that, under the State Law, Ms. Scott need only show that her age was a "motivating factor" for her termination, and rejected WPIX's position that the but-for causation standard applies to the State Law claims.  Memorandum & Order at 6.  In so instructing the jury here, WPIX does not waive, and expressly preserves, any of its objections with respect to this issue for purposes of the instruction.  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105 n.6 (2d Cir. 2010) (assuming, without deciding, that the but-for causation standard applies to State Law claims as well as to claims brought under the ADEA); *Colon v. Trump Int'l Hotel & Tower*, 2011 WL 6092299, at *5, n.2 (S.D.N.Y. Dec. 7, 2011) (same).

behind those decisions.  This means you are being asked to decide whether age discrimination was a determinative or motivating factor.  You cannot conclude that a stated reason was a pretext for age discrimination unless you conclude <u>both</u> that WPIX's stated reasons were false <u>and</u> that one of the real reasons for the decision was to discriminate against Ms. Scott because of her age.

If an employer's decision with regarding to an employee is wholly motivated by factors other than age, such as job performance, it does not violate the State and City Laws. Ms. Scott's own subjective belief that she was discriminated against is not enough to meet her burden of proof.  Nor is it enough for Ms. Scott to speculate or show a mere possibility that the reasons given by WPIX were untrue or that the real reason for her termination was her age.

Simply disproving or not believing WPIX's stated reasons, in and of itself, is not sufficient to establish a claim of age discrimination.  Rather, Ms. Scott must produce affirmative evidence of intentional age discrimination.  A showing that WPIX's asserted reasons for its decision were false may serve as evidence that WPIX intentionally discriminated against Ms. Scott because of her age because, in some cases, an employer's offer of a false or inaccurate reason may be a mask for unlawful discrimination.

Discrimination, however, does not lurk behind every inaccurate statement.  Individual decision-makers may be intentionally evasive about the reason for a decision in order to hide a reason that is non-discriminatory, but is unbecoming, embarrassing, or small-minded or that shows favoritism for someone else.  In short, even if you find that the reasons offered by WPIX were false or incomplete, it would not necessarily mean that Ms. Scott's age was a motivating factor in the decision to terminate her employment.

Thus, the significance of finding a pretext – that is, finding that WPIX's explanation for its decision was false – should you make such a finding, depends on all the circumstances of the

case.  It is a piece of circumstantial evidence which you may employ, along with everything else

before you, to determine the state of mind of any decision-maker.  To the extent that an employer

in WPIX's position would be unlikely to have given a false or incomplete explanation for its

decision except to conceal an unlawful discriminatory motive, then a false or incomplete

explanation may be evidence of discrimination.  On the other hand, if the circumstances are such

that the employer gave a false or incomplete explanation to conceal something other than age

discrimination, the giving of such an explanation will be less significant.  And if, on examination

of the circumstances, there are many possible reasons for the giving of a false or incomplete

explanation, stated or unstated, an illegal discrimination is no more likely a reason than others,

then a finding of pretext would give minimal support to a claim of age discrimination.

At all times, Ms. Scott bears the burden of persuading you that her age was a motivating

factor in WPIX's decision to terminate her employment.  In determining whether Ms. Scott's age

was a motivating factor in WPIX's decision to terminate her employment, you must consider any

evidence of intent that may be available from the direct or circumstantial evidence that has been

presented by both sides.

In considering whether Ms. Scott has met her burden of proving her age discrimination

claim, you must keep in mind that WPIX was entitled to make any business judgment or decision

it chose – however unfair, unwise, misguided or unreasonable that judgment or decision may

seem to you – so long as it did not discriminate against Ms. Scott.  You are not to decide

whether, had you been the employer, you would have made the same decision.  You are not to

judge whether WPIX's decision to terminate Ms. Scott's employment was unfair, right or wrong

from a management or business standpoint.  You are not to second-guess the wisdom of WPIX's

decision.  WPIX was entitled to make this decision for any reason, or even for no reason at all, so long as her age was not a motivating factor in the decision.

WPIX does not have the burden of establishing that its decision to terminate Ms. Scott's employment was sound or correct, or that it was actually motivated by the stated reasons; the question is not whether WPIX showed poor or erroneous judgment.  It is not necessary that you believe that WPIX made the correct decision.

If you find that Ms. Scott has met her burden of proving that her age was a motivating factor in WPIX's decision to terminate her employment, then you must find in her favor on the City and State Law claims. If, however, you find that Ms. Scott has not met her burden on proving that her age was a motivating factor in WPIX's decision to terminate her employment, then you must find for WPIX on the City and State Law claims.

5-88 Modern Federal Jury Instructions-Civil P 88.02; *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009); *Weiss v. JPMorgan Chase & Co.*, 2010 U.S. Dist. LEXIS 2505 (S.D.N.Y. Jan. 13, 2010); *Melman v. Montefiore Med. Ctr.*, 2012 WL 1913930 (1st Dep't 2012).

<u>DAMAGES</u>

I.      <u>**Ms. Scott's Proposed Instructions**</u>

If you find that WPIX has violated the Federal, New York State, or New York City laws regarding discrimination, you may award Ms. Scott compensatory damages. Compensatory damages include:

(1) back pay, which is the salary and benefits Ms. Scott would have earned from the date she was terminated (August 26, 2009) to the date you, the jury, return a verdict on her claim;

(2) front pay, which represents the future salary and benefits that you, the jury, believe Ms. Scott would have earned if she not been terminated; and

(3) compensation for emotional injuries, including humiliation and mental anguish. An award for mental anguish must be based on pecuniary loss and emotional injuries actually suffered as a result of the discrimination.

If you find that WPIX has violated the ADEA, Ms. Scott may also be entitled to liquidated damages in a sum equal to the back-pay award if you find that WPIX acted willfully. WPIX acted willfully if it deliberately and intentionally terminated Ms. Scott because of her age and WPIX knew that such conduct was unlawful or it showed reckless disregard for whether such conduct was unlawful or not, that is, WPIX knew there was a high probability that such conduct was unlawful but terminated Ms. Scott anyway.


5-88 Modern Federal Jury Instructions – Civil P 88-41; *Lutheran Social Serv., Inc. v. State Div. of Human Rights*, 74 N.Y.2d 824 (1989); *Dominic v. Consolidated Edison Co.*, 822 F.2d 1249 (2d Cir. 1987); *Becerril v. E. Bronx NAACP Child Dev. Ctr.*, No. 08 Civ. 10283, 2009 U.S. Dist. LEXIS 76376, at *2 (S.D.N.Y. Aug. 18, 2009); 5-88 Modern Federal Jury Instructions – Civil P 88-38; *Banks v. The Travelers Cos.*, 180 F.3d 358 (2d Cir. 1999); 5-88 Modern Federal Jury Instructions – Civil P 88-39; *Paolitto v. Brown E. & C.*, 151 F.3d 60 (2d Cir. 1998).

**II.**      **WPIX's Response to Proposed Instructions**

The Court, and not the jury, decides whether to award Ms. Scott any back pay, front pay, or other equitable relief. *Broadnax v. City of New Haven*, 415 F.3d 265, 271 (2d Cir. 2005). Under the Seventh Amendment, courts decide equitable relief, such as back pay or front pay. Therefore, the Court should instruct the jury only with respect to compensatory damages and punitive damages, as well as on what constitutes willful conduct with respect to potential liquidated damages under the ADEA.


### DAMAGES

I will now instruct you on the law of damages. The fact that I instruct you on the issue of damages does not mean that Ms. Scott is entitled to prevail. That is for you to decide. I instruct you on this subject only in the event you decide that Ms. Scott has sustained her burden of proof as to liability. You reach the issue of damages only if you find that Ms. Scott has proven, by a preponderance of the evidence, that she is entitled to recover under the law as I have explained the law to you.

If you decide that Ms. Scott is not entitled to recover against WPIX on her claims, you need go no further. In that event, please return to the courtroom without considering the issue of damages.

It is your sole and exclusive function to determine the sum of money, if any, which will justly and fairly compensate Ms. Scott for the injuries and damages you find she sustained, and only from the evidence in this case, based on the law I will give you, not based on an attorney's statement, claim, or argument.

The purpose of awarding monetary damages in this type of case is to compensate Ms. Scott for the damages she sustained as a result of the culpable conduct of WPIX.  Your award must be fair and just.  It should neither be excessive nor inadequate.  It should be reasonable.

## COMPENSATORY DAMAGES FOR EMOTIONAL DISTRESS

You may award Ms. Scott damages for emotional distress and mental anguish.  In order to recover for emotional distress, Ms. Scott must present credible testimony with respect to the claimed emotional distress and mental anguish, and, in addition, some corroboration of that testimony by circumstances that you reasonably believe would give rise to emotional distress and mental anguish, and, therefore, afford some assurance that the claim is genuine.

In your determination of the amount of monetary damages for emotional distress, you should consider the nature, character, and severity of those injuries.  In this regard, while it is not required that Ms. Scott seeks medical treatment by a doctor, psychiatrist, or psychologist for her emotional distress, you may consider the fact she did not visit nor was treated by a medical professional.  You may also consider the duration of this injury.

To award such damage, you must also find that Ms. Scott has proven, by a preponderance of the evidence, that her emotional distress and mental anguish was the direct result of WPIX's wrongful conduct.  Emotional distress damages do not include "back pay" or "lost wages."

You may not speculate about any damages for emotional distress.  You must be guided by common sense.  If you find that Ms. Scott has proven that she suffered mental or emotional distress, and that the distress was caused by WPIX's age discrimination, you must fix an amount of damages that will, as much as money can, fairly compensate Ms. Scott for her emotional distress.  However, I instruct you that the purpose of such an award of damages is to compensate

Ms. Scott for the emotional distress she actually suffered as a direct result of WPIX's wrongful

conduct, and not to punish WPIX for any act of discrimination.

*Broadnax v. City of New Haven*, 415 F.3d 265, 271 (2d Cir. 2005); *Hamza v. Saks Fifth Ave.*,
2011 U.S. Dist. LEXIS 139132 (S.D.N.Y. Dec. 5, 2011); *Osorio v. Source Enters., Inc.*, 2007
U.S. Dist. LEXIS 18725 (S.D.N.Y. Mar. 5, 2007); *Quality Care Inc. v. Rosa*, 194 A.D.2d 610,
611 (2d Dep't 1993); *Haskell v. Kaman Corp.*, 743 F.2d 113, 120 (2d Cir. 1984); *McIntosh v.
Irving Trust Co.*, 887 F. Supp. 662, 666 (S.D.N.Y. 1995); *Dessie v. Generale Bank*, 799 F. Supp.
1544, 1552-53 (S.D.N.Y. 1992); *Cosmos Forms Ltd. v. Sate Div. of Human Rights*, 150 A.D.2d
442, 442-43 (2d Dep't 1989); E.J. Devitt, C.B. Blackmar & M.A. Wolff, Federal Jury Practice
and Instructions, Civil Vol. 3 (4th ed. 1987), 104-06PP; 3 O'Malley, Grenig and Lee, Federal
Jury Practice and Instructions, § 128.60 (5th ed. 2001).

### III.     Ms. Scott's Reply to WPIX's Position

Damages to be awarded under the State and City laws should be determined by a jury.

"[A]ny form of money damages, including front pay, is a legal remedy to be decided by the jury

under the NYSHRL." *Chisolm v. Mem'l Sloan Kettering Cancer Ctr.*, 82 F. Supp. 2d 573, 576

(S.D.N.Y. Nov. 4, 2011); *Epstein v. Kalvin-Miller Int'l, Inc.*, No. 96 Civ. 8158, 2000 U.S. Dist.

LEXIS 17311, at *3 (S.D.N.Y. Nov. 29, 2000) ("[F]ederal courts sitting in New York and

applying New York law have ruled that front pay is a jury question . . ."); *Thomas v. iStar Fin.,

Inc.*, 508 F. Supp. 2d 252, 257 (S.D.N.Y. 2007) (jury decided awards for back pay and front pay

on NYCHRL claim).

## PUNITIVE DAMAGES

### I.   Ms. Scott's Proposed Instructions

If you find that WPIX violated the New York City laws, Ms. Scott may also be entitled to recover punitive damages.  You may award punitive damages if you find that, in terminating Ms. Scott, WPIX either (1) acted with malice and reckless indifference, or (2) engaged in egregious or outrageous acts that support an inference of evil motive.

In calculating the amount of punitive damages to be awarded, you should determine an amount reasonably necessary to punish WPIX for its conduct in discriminating against Ms. Scott based on her age and to deter WPIX and others from similar conduct in the future.

*Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*, No. 09 Civ. 8211, 2011 U.S. Dist. LEXIS 130089 (S.D.N.Y. Nov. 4, 2011); *Farias v. Instructional Sys.*, 259 F.3d 91 (2d Cir. 2001); *Vasbinder v. Scott*, 976 F. 2d 118, 121 (2d Cir. 1992).

### II.   WPIX's Response to Proposed Instructions

If you find that WPIX violated the City Law, Ms. Scott also may be entitled to recover punitive damages.  The City Law permits the jury, under certain circumstances, to award Ms. Scott punitive damages against WPIX in order to punish WPIX for extraordinary misconduct and to serve as an example or warning to others not to engage in such conduct.

If Ms. Scott proves by a preponderance of the evidence that, in terminating her employment, WPIX acted with malice or reckless indifference to Ms. Scott's protected rights under the City Law, you may, but are not required, to award an additional amount as punitive damages.  An act is done with "malice" if it is done or prompted or accompanied by ill will or spite or grudge toward the injured person individually.  An employer acts with reckless indifference to an employee's protected rights when it knows that its actions violate federal law.

I instruct you that if WPIX made a good faith effort to comply with the City Law, you may consider this in determining whether to award punitive damages to Ms. Scott, or with respect to the amount of such damages. The good faith of WPIX is established if it proves that it had an anti-discrimination policy and that it made a good faith effort to enforce its policy with respect to Ms. Scott.

Whether to award Ms. Scott punitive damages and the amount of those damages are within your discretion. I can give you no objective yardstick for measuring punitive damages. You will have to use your own common sense and experience and determine what amount would be appropriate to punish WPIX. However, the amount of punitive damages should be fair and reasonable and proportionate to the need to punish WPIX and to deter others from like conduct, but should not be based on whim or unrestrained imagination. Punitive damages must bear a reasonable relationship to Ms. Scott's actual injury. You should consider the amount of compensatory damages in determining the amount of punitive damages.

*Kolstad v. ADA*, 527 U.S. 526, 545 (1999); *Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274 (S.D.N.Y. 2008).

### III.   Ms. Scott's Reply to WPIX's Position

WPIX's proposed instruction is misguided and misleading. The standard to recover punitive damages under the City law is clear: in order to recover such damages, plaintiff must show *either* (1) the employer acted with "malice and reckless indifference," which refers to the employer's knowledge that it may be acting in violation of federal law, or (2) "egregious or outrageous acts" by the employer that support an inference of the requisite evil motive.

WPIX's proposed instruction on the *Kolstad* defense is also misleading because this defense requires a defendant to establish both that (1) the unlawful conduct at issue was perpetrated "solely" by an employee or independent contractor, and (2) during the relevant time period, the employer implemented and complied with anti-discrimination policies, programs and procedures.

*Becceril v. E. Bronx NAACP Child Dev. Ctr.*, No. 08 Civ. 10283, 2009 U.S. Dist. LEXIS 76376, at *18 (S.D.N.Y. Aug. 18, 2009); *Katz v. Adecco United State*s, No. 11 Civ. 2530, 2012 U.S. Dist. LEXIS 2898, at *31-32 (S.D.N.Y. Jan. 10, 2010)

## MITIGATION OF DAMAGES

### [TO BE GIVEN ONLY IF JURY DETERMINES BACK PAY AND FRONT PAY]

The law requires that Ms. Scott make a reasonable effort to mitigate any lost wages by seeking other suitable employment after her termination from WPIX.  In determining the amount of back or front pay to award Ms. Scott, I instruct you that WPIX bears the burden of demonstrating that Ms. Scott has failed to satisfy the duty to mitigate.  WPIX may satisfy this burden by proving (1) that suitable work existed, and (2) that Ms. Scott did not make reasonable efforts to obtain it.  However, WPIX is released from the duty to establish the availability of comparable employment if it can prove that Ms. Scott made no reasonable efforts to seek such employment.  That is, WPIX need not show that other suitable employment in fact existed if Ms. Scott failed to pursue employment.  You are instructed that you may reduce the amount of back or front pay to award Ms. Scott if you find that she did not make a reasonable effort to mitigate her damages.

*Broadnax v. City of New Haven*, 415 F.3d 265, 268-69 (2d Cir. 2005).

IV.    **Ms. Scott's Response to Proposed Instructions**

Ms. Scott refers to Modern Federal Jury Instruction 77-7 for the appropriate instruction on mitigation of damages.

4-77 Modern Federal Jury Instructions-Civil P 77-7

**WILLFULNESS**

I.     **WPIX's Proposed Instructions**

If you find that WPIX discriminated against Ms. Scott on the basis of her age under the ADEA, then you must decide whether WPIX willfully violated the ADEA.  If you find that WPIX's violation of the ADEA was willful, the Court, and not the jury, will award Ms. Scott money damages in addition to the damages that you may award.

A violation is willful if the employer, in this case WPIX, knew that its conduct was prohibited by the federal law under which the plaintiff sues.  Also, a violation is willful if the employer showed reckless disregard as to whether its conduct was prohibited by the federal law under which the plaintiff sues.  A violation is willful if it is done voluntarily, deliberately, and intentionally and not by accident or inadvertence.

You may consider the statements made, the acts done or omitted, the reasons advanced by WPIX for its decision to terminate Ms. Scott's employment, and all the facts or circumstances which show that WPIX violated the ADEA.  Intentional discrimination is seldom admitted, and it is not necessary to find direct evidence of intent to discriminate in order to find that the violation was willful.

However, in determining whether a willful violation has occurred, you should keep in mind that WPIX's knowledge that the ADEA is "in the picture" does not necessarily establish a willful violation.  When an employer believes in good faith that its decisions are permissible under the ADEA, then a finding of willfulness is not warranted.

As I stated previously, a violation is willful if the employer knew that its conduct was prohibited by the federal law under which the plaintiff sues.  Also, a violation is willful if the employer showed reckless disregard as to whether its conduct was prohibited by the ADEA.  A

violation is willful if it is done voluntarily, deliberately, and intentionally and not be accident, inadvertence, or with a good faith belief that its conduct was permissible.

*Scully v. Summers*, 2000 U.S. Dist. LEXIS 12519 (S.D.N.Y. Aug. 30, 2000).

## II.    Ms. Scott's Reply to WPIX's Position

Ms. Scott has included an instruction on willfulness in the general instructions on damages.  WPIX's proposed instruction is misleading.  An employer acts willfully where the proof shows that an employer was indifferent to the requirements of the governing statute and acted in a purposeful, deliberate, or calculated fashion.  Indifference exists where an employer acts without interest or concern for its employees' rights under the governing statute at the time it decides to take the action complained of, that is, without making any reasonable effort to determine whether the decision to take the action complained of violates the law.

*Benjamin v. United Merchants & Mfrs., Inc.,* 873 F.2d 41, 44 (2d Cir. 1989); *Virgona v. Tufenkian Import-Export Ventures, Inc.*, No. 05 Civ. 10856, at *22-23 (S.D.N.Y. Sept. 23, 2008)